2021 IL App (1st) 181506-U

No. 1-18-1506

Order filed September 2, 2021

Fourth Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 14 CR 13552 (01) |
| | ) | |
| NICHOLAS WALKER, | ) | |
| | ) | Honorable Allen F. Murphy, |
| Defendant-Appellant. | ) | Judge, Presiding |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justices Gordon and Reyes concurred in the judgment.

ORDER

¶ 1    *Held*: Defendant did not meet burden to demonstrate plain error when the circuit court did not abuse its discretion by sentencing defendant to 25 years for armed robbery and 8 years for aggravated discharge of a firearm. The circuit court abused its discretion in ordering that the sentences run consecutive. Defendant was not deprived of the effective assistance of counsel when counsel did not argue that the State had failed to prove predicate convictions for armed habitual criminal in support of a motion for directed finding when the State was permitted to reopen the evidence to present proof of predicate convictions.

¶ 2    Nicholas Walker appeals his sentence following his convictions for armed robbery with a

firearm, aggravated discharge of a firearm, and armed habitual criminal (AHC). He also appeals

his convictions for AHC contending his counsel was ineffective for not arguing in a motion for directed finding that the State had failed to prove convictions for the predicate offenses.[1]

¶ 3                                    I. BACKGROUND

¶ 4         Codefendants Nicholas Walker and Ventreal Lewis[2] were tried jointly before the bench. As to Walker, the State proceeded on two counts of AHC, one count of armed robbery, one count of aggravated discharge of a firearm, and one count of aggravated assault.

¶ 5         Allen Ross testified that he drove to his aunt's house in Dolton, Illinois in the late evening of June 1, 2014, to pick up an air mattress. He parked in front of the home but left the windows down and the car running while he went inside. He spoke briefly with his aunt and her boyfriend before deciding he should return to his car as he noticed two men walking by across the street. Ross walked toward his car carrying the air mattress box over one shoulder and holding his cell phone in the other hand, which he was using to talk to his girlfriend, Michele. When he reached the sidewalk, he noticed the two men had come from across the street and were approaching him from either side. They both repeatedly stated, "What you got?" Ross then saw the man to his right, who he identified in court as Lewis, was holding a chrome revolver. Ross replied that he did not have anything, only the box he was holding. Lewis reached into Ross's pocket and pulled out his keys. Lewis then opened the passenger door of Ross's car. Wanting to fight him off, Ross moved toward Lewis but the other individual, who Ross identified in court as Walker, pulled a black revolver and said, "get back." Walker then took the box and cell phone from Ross. Ross put his hands up. Walker and Lewis, seeming to ascertain that Ross had nothing they found worth stealing, started arguing with each other.

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.
[2] Lewis has appealed separately.

¶ 6    Ross ran back inside his aunt's home and found her calling the police. Looking outside, Ross observed Walker and Lewis run down the street. Ross decided to follow them in his car. Walker and Lewis ran to a blue car parked down the street. Lewis entered the driver seat and Walker the passenger seat. They drove off and Ross pursued them. After a few turns, Ross saw and heard 4 or 5 shots fired from the passenger side of the blue car. As the chase continued, a marked police vehicle joined the pursuit following the blue car but ahead of Ross's. Eventually, the blue car pulled to the right side of the street and came to a stop. The police vehicle stopped just behind it. Ross pulled to the left side of the street and stopped two car lengths behind. Ross saw Walker and Lewis run from the car on foot in opposite directions.

¶ 7    Additional police officers arrived at the location where the cars stopped. Ross used an officer's phone to call Michele. Michele informed Ross she was still on the line with his phone that Walker had taken and asked him to call her back on a different phone. A while later, Michele arrived at the scene and handed her phone to the police. Ross walked with officers down a nearby alley where he saw a canine officer with their dog enter a garage and then emerge with Walker. Ross identified Walker as one of the men who robbed him. As he was being led to an ambulance, Walker told Ross, "this was nothing, [I]'ll be out soon, look [me] up on Facebook" and gave his name, Nick Walker. Police searched the garage and recovered Ross's cell phone.

¶ 8    The next day, Ross identified Walker in both a photo array and then a lineup. While at the police station, Walker used Michele's phone to view Walker's Facebook page. Upon viewing photos on Walker's Facebook page, Ross recognized Lewis and informed police he was the second robber. The next day, Ross identified Lewis in a photo array. On June 18th, Ross identified Lewis in a lineup.

¶ 9        Michele Ross[3] testified she was speaking with Ross by phone on the night of June 1, 2014. She heard Ross depart from his aunt's house. Moments later she heard Ross say, "What's up bro?" and a different voice say, "What you got?" and "Run your pockets." She then heard Ross say he did not have anything. Another voice said, "Is this your car?" She then heard a scratching noise for some time, followed by car doors opening and closing. That was followed by the sound of a car struggling to start. Eventually, a running engine could be heard, and a voice said, "Drive, drive he behind us." Michele continued to listen and was able to make out two people talking to each other and arguing about which way to turn. Michele heard gunfire and then what sounded like one side of a conversation in which the speaker was telling another person they would report their car stolen tomorrow but needed to get somewhere safe. Over a loudspeaker, she heard police direct the green Monte Carlo (Ross's car) to stop chasing. She heard someone say they will pull over in a minute and run. Michele heard the scratching noise again.

¶ 10       A short time later, Michele received a call from Allen and went to the location of the cars. She handed her phone to a police officer and explained it was on the line with Ross's phone. Later, she saw a person being led to an ambulance. He said to look him up on Facebook, his name was Nick Walker, he will be out, and "this [is] what [I] do."

¶ 11       Dolton Police Officer Patrick Carr testified he was on patrol in a marked squad car around 11:40 p.m. on June 1, 2014, when he received a call of an armed robbery in progress. As he headed toward the reported location, he saw two cars, a blue car followed by a green car, coming in the opposite direction at high speed. The cars turned left in front of Officer Carr. The passenger of the blue car pointed a handgun at Officer Carr. Through a series of turns, Officer Carr was able to maneuver behind the blue car and activated his lights and sirens. The blue car eventually stopped

_____

[3]Michele and Allen married in between the time of the robbery and the trial.

and the occupants "bailed," running in different directions. Officer Carr stopped his vehicle and exited. Allen Ross arrived driving the green car that had been following.

¶ 12    Officer Carr learned that Ross's cell phone had been stolen. The police "pinged" Ross's phone and went with a canine unit to search its location. The canine officer went into a garage and Walker was escorted out. An ambulance was called because Walker had been bitten on the arms during his apprehension. Officer Carr went into the garage and found Ross's cell phone. Officer Carr returned to the blue Impala and searched it. There, he found two handguns underneath the passenger's seat, one chrome and one black.

¶ 13    Dolton Police Detective Dave Crudup testified he went to the location of the abandoned blue Impala. Detective Crudup took custody of two revolvers from under the front passenger seat. One was a stainless steel .38 caliber Smith & Wesson; the other a .22 caliber blue steel (black) Regent revolver. The Regent revolver contained four live rounds and four discharge cartridge casings. Detective Crudup explained live rounds still contain a bullet while discharge cartridge casings remain after a bullet is fired. The Smith & Wesson revolver had four live rounds, but no empty cartridge casings. He identified both revolvers, live rounds, and discharge casings in court.

¶ 14    The State rested after Detective Crudup's testimony and admission of the exhibits presented. Walker's counsel moved for a directed finding of acquittal arguing the State had failed to prove "the offenses" beyond a reasonable doubt. Counsel then added a specific argument regarding the count alleging the aggravated assault of Officer Carr. The trial court found that even in the light most favorable to the State, the evidence did not establish beyond a reasonable doubt that Walker pointed a handgun at Officer Carr. The court granted Walker's motion on the aggravated assault count but denied it for all other counts.

¶ 15        Lewis called a witness, Sergeant Allbritton of the Dolton Police Department, to testify in his defense, but Walker did not present any witnesses or other evidence. Neither defendant elected to testify. The court asked the State if it wished to present any evidence in rebuttal. The State sought to admit two certified copies of Walker's prior felony convictions. The court asked if the State was seeking to reopen its case in chief to present those exhibits because they were not rebuttal evidence. The State answered "yes," and the court allowed the exhibits to be admitted in the State's reopened case in chief over the objections of defense counsel. The court found Walker guilty of armed robbery with a firearm, aggravated discharge of a firearm, and two counts of AHC.

¶ 16        At sentencing, defense counsel submitted that Walker had a supportive upbringing, graduated high school, had taken college courses, and was tutoring other inmates to obtain their GED. Counsel described the crime as "stupidity at the greatest level," but not reflective of who Walker is. He further noted that no one was hurt and "it was pretty much a run-of-the-mill armed robbery." The court indicated it read the presentence report and noted Walker had a decent family background. But the court observed Walker's criminal activity was escalating. He had prior felony convictions for driving with a suspended license, attempted residential burglary, and unlawful use of a weapon by a felon. The court did not find the robbery "run-of-the-mill" because Walker teamed up with Lewis and gunshots were fired as they tried to get away. The court then sentenced Walker to 10 years in prison for armed robbery plus a mandatory enhancement of 15 years because a firearm was used in the offense; a concurrent term of 10 years for AHC with the second AHC count merged; and a consecutive term of 8 years for aggravated discharge of a firearm.

¶ 17        Walker filed a motion to reconsider sentence, arguing that the court had not made the requisite finding that consecutive sentences were necessary to protect the public; nor would the record support such a finding. The court observed that Ross's decision to pursue Walker and Lewis

was not smart, but the discharge of a firearm from the car during their getaway took the offense "up a notch." The court remarked, "Robbing somebody is one thing, gun shooting is another." The court then concluded "because they fired a weapon during their getaway, I believe * * * that a consecutive sentence is needed to protect the public from further criminal conduct of these Defendants." Thus, the court denied the motion to reconsider sentence. This appeal followed.

¶ 18     On appeal, Walker argues the trial court abused its discretion by failing to consider his youth and personal history in mitigation and by imposing consecutive sentences. He further claims his trial counsel failed to render effective assistance by not moving for a directed finding on the AHC counts at the close of the State's case in chief.

¶ 19                                    II. ANALYSIS

¶ 20                                    A. Sentencing

¶ 21     Walker asserts two claims to argue that the trial court abused its discretion in imposing a 33-year aggregate sentence: first, that the court failed to adequately consider the mitigating effects of his youth and personal history; and second, that the trial court improperly found consecutive sentences were warranted. On either basis, he requests this court to reduce his sentence under our authority provided in Supreme Court Rule 615(b)(4) or to remand for a new sentencing hearing in the circuit court.

¶ 22                        1. Mitigation and Rehabilitative Potential

¶ 23     To support his first claim, Walker submits that he was 23 years old at the time of the offenses; he was ages 18 and 20 at the time of his prior felony offenses; the trial court did not mention his age at sentencing; scientific research shows the parts of the brain involved in behavior control are still developing into the mid-20s; courts have recognized that "youthful" offenders are less culpable than adults and have greater rehabilitative potential; and the 33-year aggregate

sentence is "only" seven years less than a *de facto* life-without-parole term. In addition, Walker argues the trial court did not give proper weight to mitigating factors and his rehabilitative potential as shown by his education, work experience, and future aspirations. Further, Walker avers his prior offenses were not violent and he had never been sentenced to prison before. As to this offense, Walker submits there was no finding that he personally fired a handgun or that the shots fired resulted in injury to a person or property.

¶ 24　　　The State argues Walker forfeited his first sentencing claim by failing to raise the issues with specificity in his motion to reconsider sentence. To preserve a claim of sentencing error, the defendant must make a contemporaneous objection and raise the issue in a postsentencing motion. *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). Walker replies that he did raise these issues in his motion to reconsider sentence because the motion stated that the court failed to properly consider his background. Alternatively, Walker urges us to review the claim under the plain error doctrine.

¶ 25　　　We do not believe the motion to reconsider sentence raised these issues and, therefore, the contentions were not preserved for review. In Walker's motion to reconsider sentence, the only assertion arguably addressing these issues stated "[t]he sentence is excessive in view of defendant's background and his participation in the offense." Although personal background naturally includes a person's age and other details, the motion did not set forth any assertions like those presented on appeal necessary for us to conclude the claim was presented with the requisite specificity to preserve the issue for review. See *People v. Woods*, 214 Ill. 2d 455, 470 (2005) (failure to specifically raise an issue in a posttrial motion forfeits the issue for review). Thus, the trial court was not alerted that Walker was making this argument simply by the broad reference to background. See *People v. Jones*, 2015 IL App (1st) 121016, ¶ 106, *vacated on other grounds* (a

"boilerplate phrase" lacking specificity does not preserve a contention for appeal). Therefore, Walker's first sentencing claim is forfeited.

¶ 26     When a defendant seeks review of an unpreserved claim of error, the plain error doctrine allows us to consider the claim when the defendant first shows a "clear or obvious error" occurred. *People v. Naylor*, 229 Ill. 2d 548, 593 (2008). Upon showing a clear or obvious sentencing error, a defendant must then show "either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Hillier*, 237 Ill. 2d at 545, citing *People v. Hall*, 195 Ill.2d 1, 18 (2000). The defendant bears the burden of persuasion under both prongs of the plain error doctrine. *Naylor*, 229 Ill. 2d at 593. The first step is to discern whether any clear or obvious error occurred at sentencing at all. *People v. Eppinger*, 2013 IL 114121, ¶ 19. Absent any error, there can be no plain error and the defendant's forfeiture will be honored. *Id*.

¶ 27     To assess whether an error occurred here, we observe an important distinction in Walker's first claim. While the claim appears under a single heading, it sets forth two distinct lines of argument. One centers on his age alone, relies on authority regarding constitutional considerations for juvenile offenders, and contends similar considerations should apply in sentencing young adults because "brain development has not reliably reached adult levels of functioning until well into the third decade of life." The other line of argument centers on mitigating factors specific to the offense or Walker's individual background and were contained in his presentence report or otherwise presented at his sentencing hearing.

¶ 28     Walker's age-related line of argument is not specific to him as an individual and, by its own assertions, would apply for young adults as a class. It also relies on authority rooted in the eighth amendment to the United States Constitution and the proportionate penalties clause of the

Illinois Constitution regarding constitutional limits on sentencing for juvenile offenders. Namely, the eighth amendment prohibits mandatory life-without-parole for juvenile offenders (*Miller v. Alabama*, 567 U.S. 460 (2012)) or a term of years that amounts to the functional equivalent, referred to as *de facto* life, which is a prison term greater than 40 years (*People v. Buffer*, 2019 IL 122327, ¶ 41) unless the court gives special consideration to a juvenile's youth and its attendant circumstances (*People v. Holman*, 2017 IL 120655, ¶¶ 43-44; *People v. Lusby*, 2020 IL 124046, ¶¶ 33, 52). But the United States and Illinois Supreme Courts have only recognized these protections for juvenile offenders, that is persons under age 18 at the time of their offense. *People v. Harris*, 2018 IL 121932, ¶ 61. Plainly, Walker was not under age 18 at the time of this robbery. Some appellate court decisions have allowed young adults to assert similar age-based claims challenging their sentences as applied under the proportionate penalties clause. See, *e.g.*, *People v. Minniefield*, 2020 IL App (1st) 170541 (remanding for 19-year-old offender to develop the record in postconviction proceedings to demonstrate how the evolving science of brain development in young adults may affect his 50-year sentence). But these considerations have not been extended to offenders who were over age 21. See *People v. Rivera*, 2020 IL App (1st) 171430, ¶¶ 25-27 (declining the same for offenders over 21). Thus, with Walker being age 23 at the time of the robbery, our precedent does not support that the trial court was required to give special consideration to his youth and its attendant circumstances in sentencing. Furthermore, even if these constitutional protections did extend to a 23-year-old offender, Walker's sentence is below the 40-year threshold that triggers such protections. For these reasons, the circuit court was not required to give special consideration to Walker's age and, therefore, did not err on this basis.

¶ 29          For the remaining part of Walker's claim based on factors specific to him, we review the trial court's sentencing decision for an abuse of discretion. *People v. Alexander*, 239 Ill. 2d 205,

211 (2010). A sentence is considered an abuse of discretion where it is "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." (Internal quotation marks omitted.) *Id*. The trial court has broad discretion when imposing a sentence, and its sentencing decisions are given great deference because the trial judge, having observed the defendant and the proceedings, is in a better position to consider the defendant's credibility, demeanor, moral character, mentality, social environment, habits, and age. *Id*. at 212-13.

¶ 30    Walker argues the trial court abused its discretion in sentencing because the court made no remarks concerning factors in mitigation and failed to consider evidence of his rehabilitative potential. He also argues mitigating factors and his rehabilitative potential render his sentence excessive. Specifically, Walker notes there was no finding that he fired a weapon; no one was injured; his prior offenses were not violent; he had never been incarcerated before; and substance abuse may have contributed to his criminality. He submits his "high" rehabilitative potential is shown by his completion of high school; taking college courses; work history; drug treatment; and tutoring of other detainees working to obtain their GEDs.

¶ 31    We presume that the trial court considered all relevant factors and any mitigation evidence presented. *People v. Brewer*, 2013 IL App (1st) 072821, ¶ 55. The trial court "has no obligation to recite and assign value to each factor." *People v. Perkins*, 408 Ill. App. 3d 752, 763 (2011). When a defendant argues the court failed to take certain factors into consideration, the defendant "must make an affirmative showing the sentencing court did not consider the relevant factors." *People v. Burton*, 2015 IL App (1st) 131600, ¶ 38. Apart from noting the trial court did not specifically mention mitigating factors or his rehabilitative potential, Walker makes no showing that the court did not consider them. Rather, he reiterates the mitigation evidence presented in his presentence

report and at the sentencing hearing to assert his sentence is excessive. We find this insufficient to make an affirmative showing that the trial court failed to consider these factors. As noted, the trial court is not required to recite each factor and we presume it considered all relevant information, including information presented in a presentence report. *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 20. Thus, the trial court's lack of specific remarks is not a basis to find it abused its discretion.

¶ 32    We next address Walker's contention that his sentence is excessive. A sentence should reflect the "seriousness of the offense" and "the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11; *People v. Jones*, 2015 IL App (1st) 142597, ¶ 38. But the most important factor in sentencing involves the seriousness of an offense, not mitigating evidence. *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 123. A sentence within statutory guidelines is presumptively valid. *People v. Hauschild*, 226 Ill. 2d 63, 70 (2007). Walker's 25-year sentence for armed robbery with a firearm falls well within the statutory range of 21 to 45 years (6 to 30 years as a class X offense plus a mandatory 15-year enhancement). 720 ILCS 5/18-2 (West 2014); 730 ILCS 5/5-4.5-25(a) (West 2014). Likewise, his 8-year sentence for aggravated discharge of a firearm falls within the statutory range of 4 to 15 years. 720 ILCS 5/24-1.2(b) (West 2014); 730 ILCS 5/5-4.5-30(a) (West 2014). With consecutive sentences, Walker faced up to 60 years in prison and a minimum of 25.

¶ 33    Thus, Walker's sentences are far closer to the minimum than the maximum, especially for armed robbery with a firearm, his most serious conviction. "The phrase 'excessive sentence' is reserved for a sentence within the statutory range but without regard for a particular defendant's rehabilitative potential." (Internal quotation marks omitted.) *People v. McKinley*, 2020 IL App (1st) 191907, ¶ 71. As noted, we presume the trial court considered evidence of Walker's

rehabilitative potential and he has not made an affirmative showing to the contrary. The existence of mitigating factors does not require the trial court to sentence close to the minimum. *People v. Flores*, 404 Ill. App. 3d 155, 158 (2010). And "[e]ven if no aggravating factors are present, [a] defendant is not necessarily entitled to a minimum sentence." *People v. Cook*, 279 Ill. App. 3d 718, 727 (1995). Nor is a defendant entitled to a near minimum sentence when a mandatory enhancement applies. *People v. Harvey*, 162 Ill. App. 3d 468, 475 (1987). Accordingly, we do not find the sentences imposed here to be greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offenses. Walker's argument effectively asks us to reweigh the mitigating factors and substitute our judgment for that of the trial court, which we will not do. *People v. Jones*, 2015 IL App (1st) 142597, ¶ 40. Therefore, we find no abuse of discretion and, thus, no error.

¶ 34　　　Finally, because we find no error occurred, Walker has not met his burden on the first prong of plain error, and we honor the forfeiture of his first sentencing claim.

¶ 35　　　　　　　　　　2. Consecutive sentences

¶ 36　　　We turn to Walker's preserved claim of error regarding consecutive sentences. Walker argues the trial court abused its discretion in finding that consecutive sentences were necessary to protect the public from his further criminal conduct.

¶ 37　　　In cases where consecutive sentences are, as here, not mandatory, concurrent sentences must be imposed, unless, considering the nature and circumstances of the offense and the history and character of the defendant, consecutive sentences "are required to protect the public from further criminal conduct by the defendant." 730 ILCS 5/5-8-4(c)(1) (West 2014). Consecutive sentences should be imposed sparingly (*People v. Buckner*, 2013 IL App (2d) 130083, ¶ 35), and are reserved for exceptional cases (*People v. Phagan*, 2019 IL App (1st) 153031, ¶ 116). To impose

discretionary consecutive sentences, the trial court need not use any particular words so long as the record indicates it believed consecutive sentences were necessary to protect the public. *Buckner*, ¶ 37. Nevertheless, the trial court must adequately articulate the basis for that conclusion. *Id*. ¶ 35. A "boilerplate" ruling (*Phagan*, ¶ 125) or perfunctory references to the defendant's background and the trial proceedings are insufficient (*People v. Dorosz*, 217 Ill. App. 3d 1016, 1022-23 (1991)). We review the trial court's imposition of consecutive sentence for an abuse of discretion. *Buckner*, ¶ 36. An abuse of discretion has occurred if the record does not support the trial court's determination that consecutive sentences were necessary to protect the public. *Id*.

¶ 38    Here, the trial court did not set forth its basis for imposing consecutive sentences at Walker's sentencing hearing. Only after Walker raised the issue in his motion to reconsider sentence did the trial court make an express finding that consecutive sentences were necessary to protect the public from Walker's future criminal conduct. The court stated its basis for that conclusion was that the defendants fired a handgun during the getaway as Ross pursued them.

¶ 39    While the trial court made an express finding that consecutive sentences were necessary to protect the public, we find the asserted basis insufficient for that conclusion. The finding was little more than a "boilerplate" conclusion based on the fact a firearm was discharged. The court did not articulate why the discharge of a firearm in this case made consecutive sentences necessary to protect the public from Walker's future criminal activity or provide any other basis.

¶ 40    In addition, the fact that a handgun was fired is inherent in the offense of aggravated discharge of a firearm. Generally, "a factor implicit in the offense for which the defendant has been convicted cannot be used as an aggravating factor in sentencing for that offense." *People v. Phelps*, 211 Ill. 2d 1, 11 (2004). This rule is not intended to apply rigidly, as sentences vary in accordance with the circumstances of the particular case. *People v. Williams*, 2019 IL App (1st)

173131, ¶ 24. For example, the degree of harm inflicted on the victim may be considered as an aggravating factor in imposing a sentence even when serious bodily harm is implicit in the offense. *Sauseda*, 2016 IL App (1st) 140134, ¶ 17. But the reasoning here is not like that. Rather, the court relied on the mere fact that a firearm was discharged, not any circumstances that aggravated this discharge of a firearm. "The defendant bears the burden of establishing that a sentence was based on an improper consideration, and we will not vacate a sentence based upon an improper factor if we can determine from the record that the weight placed on the improperly considered factor was so insignificant that it did not lead to a greater sentence." *People v. Sherman*, 2020 IL App (1st) 172162, ¶ 52. Here, the court clearly imposed a greater sentence based on an improper factor.

¶ 41    Moreover, the trial court's finding does not reflect a "sparing" imposition of consecutive sentences. A substantial minimum sentence already applied due to the 15-year mandatory enhancement applied for the use of a firearm in the offense of armed robbery. The court had already considered aggravating factors in its sentencing determination on the individual offenses. And the discharge of a firearm was inherent in the offense for which the sentence was ordered to run consecutive. Under these circumstances, we believe the sparing imposition of consecutive sentences requires more exceptional rationale than the mere fact a handgun was fired. No such basis was stated, nor is one apparent from the record.

¶ 42    For these reasons, we find the record does not support the trial court's determination that consecutive sentences were necessary to protect the public from Walker's future criminal activity. Accordingly, the trial court's imposition of consecutive sentences was an abuse of discretion. Under our authority provided in Supreme Court Rule 615(b)(4), we modify Walker's consecutive sentence for aggravated discharge of a firearm to run concurrent to his other convictions in this case.

¶ 43                                    B. Directed finding on armed habitual criminal

¶ 44          Last, Walker argues his counsel was ineffective for not moving for a directed finding on the AHC counts at the close of the State's case in chief. The record shows Walker's counsel moved for a directed finding on "the offenses" but only offered a specific argument regarding the aggravated assault of Officer Carr. Counsel did not specifically request an acquittal on the AHC counts based on the State's failure to prove predicate convictions to sustain an AHC conviction. Indeed, the State had not presented evidence of predicate convictions by that time. But the State later requested to reopen the evidence. Over objection, the circuit court permitted the State to present certified copies of Walker's prior convictions.

¶ 45          To establish that a defendant was deprived of his constitutional right to the effective assistance of counsel, the defendant must satisfy the two-pronged *Strickland* test: he must show (1) counsel's performance fell below an objective standard of reasonableness and (2) a reasonable probability the result of the proceeding would have been different, but for counsel's errors. *People v. Peterson*, 2017 IL 120331, ¶ 79, citing *Strickland v. Washington*, 466 U.S. 668 (1984).

¶ 46          We believe the motion for directed finding on behalf of Walker included the AHC counts despite the lack of a specific argument given in support. Counsel stated he was requesting acquittal for "all offenses" and the court clearly understood the motion to include all counts. It expressly denied the motion on all other counts after granting it with respect to the aggravated assault count. Thus, the record rebuts that Walker's counsel failed to move for a directed finding on the AHC counts. At most, he failed to offer a specific argument on the AHC counts. But failure to make an argument in support of a directed finding does not violate a defendant's right to effective assistance of counsel. *People v. Davis*, 228 Ill. App. 3d 123, 129 (1992).

¶ 47      Even if Walker's counsel had not moved for a directed finding on the AHC counts, we could not conclude the decision was objectively unreasonable or prejudicial since the trial court had discretion to reopen the evidence for the State to cure the deficiency in its case. In fact, refraining from requesting a directed finding may be a reasonable strategy in those circumstances. See *People v. Bennett*, 331 Ill. App. 3d 198, 204-05 (2002) (Kuehn, J. specially concurring). The motion would call attention to the defect and counsel could expect most courts to be inclined to permit additional evidence. *Id*. Likewise, a decision to nevertheless move for a directed finding under these circumstances may also be reasonable strategy. *People v. Berrier*, 362 Ill. App. 3d 1153, 1166-68 (2006).

¶ 48      To be sure, "[t]he trial court retains discretion to grant a motion to reopen the evidence even after a motion for directed finding, and absent an abuse of that discretion, its decision will not be overturned on appeal." *Id*. at 202. Factors to consider on a motion to reopen the proofs include: (1) whether the failure to introduce the evidence was inadvertent; (2) any surprise or unfair prejudice to the other party; (3) the importance of the new evidence; and (4) any cogent reasons that would have justified denying the motion to reopen. *People v. Gonzalez-Carrera*, 2014 IL App (2d) 130968, ¶ 21. In this case, the State's failure to introduce evidence of Walker's predicate convictions appears to have been inadvertent and he does not contend otherwise. Nor could Walker have been surprised or unfairly prejudiced since he does not dispute the validity of the predicate convictions. The certified copies of conviction were important because they prove an element of AHC. And Walker does not submit any cogent reason that would have justified denying a motion to reopen the proofs. Thus, even if counsel had made arguments in support of a directed finding on the AHC counts, the trial court would have likely permitted the State to present additional evidence of the predicate convictions. Consequently, there is no reasonable probability that Walker

would not have been convicted of the AHC counts and, therefore, he cannot establish that he was deprived of the effective assistance of counsel.

¶ 49                              III. CONCLUSION

¶ 50         Based on the foregoing, we find the trial court did not abuse its discretion in sentencing Walker to the terms imposed for each offense, but we find the court erred in ordering the sentence for aggravated discharge of a firearm to run consecutive. We also find that Walker was not deprived of the effective assistance of counsel. We affirm the judgment of the circuit court but modify the sentences to run concurrently.

¶ 51         Affirmed as modified.