# Illinois Official Reports

## Appellate Court

***People v. Jones*, 2015 IL App (1st) 142597**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RODNEY JONES, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-14-2597 |
| Filed | December 22, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CR-14369; the Hon. Steven J. Goebel, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Stephen L. Richards, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Carol L. Gaines, and Gina DiVito, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion. Presiding Justice Pierce and Justice Neville concurred in the judgment and opinion. |

**OPINION**

¶ 1　　A jury convicted defendant Rodney Jones of first degree murder based on a fatal traffic accident that occurred when he and his codefendant fled from a residential burglary. Jones argues that the State did not prove him guilty beyond a reasonable doubt based on (i) the insufficiency of the DNA evidence linking him to the burglary and traffic accident and (ii) the lack of evidence suggesting he participated in or was accountable for the burglary. We reject both contentions. The DNA evidence, combined with other circumstantial evidence linking Jones to the car used in the burglary, support the verdict.

¶ 2　　Jones further argues that the trial court erred in instructing the jury regarding Jones's responsibility for a death occurring during an escape from a residential burglary. He asserts that the trial court also should have instructed the jury that Jones could be found responsible only if the death occurred before he reached a place of safety. Jones was not entitled to this additional language, and any error was harmless.

¶ 3　　Finally, Jones argues the 42-year sentence is excessive. He contends that the trial court failed to consider as mitigating factors either his parents' incarcerations or the physical abuse he suffered while young. But, the trial court did consider these factors in imposing a sentence in the middle of the applicable range. Moreover, given Jones's criminal history and the nature of the crime, the trial court did not abuse its discretion in imposing the sentence.

¶ 4　　　　　　　　　　　　　　　　BACKGROUND

¶ 5　　On the afternoon of July 3, 2008, Anthony Shaw learned from a friend that the house Shaw shared with his girlfriend, Joycelyn Hunter, was being burglarized. When Shaw arrived at his home, he saw a group of men standing by his neighbor's garage. Shaw flagged down a nearby police car. While Shaw informed police of the burglary, he saw a white sports utility vehicle (SUV) driving down the alley near his home. The SUV exited the alley by turning the wrong way into a one-way street. The police followed. The SUV sped up and did not stop at intersections. The police briefly lost sight of the SUV as it made a turn; when police caught up two blocks away, the SUV had crashed into a pole near a gas station. Observers at the gas station told police that the SUV's occupants had run eastbound. The gas station's surveillance video captured three people getting out of the SUV after the crash and running. The SUV also hit a Cadillac driven by 78-year-old Tommye Freeman. She died from traumatic injuries sustained in the crash.

¶ 6　　A police officer found Jones's codefendant, Byron Brown, crouched in a stairwell nearby. Brown had some jewelry and a checkbook in his pants pocket that Shaw identified as having been taken from his home. Inside the SUV, police found several televisions and a computer. Shaw later identified these items as well. A latent palm print taken from Shaw's house matched Brown's palm print. Brown appeared in the surveillance video as one of three people fleeing in the SUV after it crashed.

¶ 7　　The following day, police found a baseball cap in the SUV's debris. The SUV was towed to an impound lot, and an evidence technician collected a cigar butt from inside the SUV and cut away the driver's seat airbag, which had deployed. The evidence technician also noted blood on the driver's side passenger door.

¶ 8    The SUV's registration belonged to Jarvis Perkins. At trial, Perkins testified that he had helped Jones purchase the SUV early in 2008. Although Jones did not have the necessary identification to purchase the SUV, he paid for and drove it.

¶ 9    Brown's ex-girlfriend testified that on July 3, 2008, Brown received a phone call from his friend Jones. In August 2008, police heard a phone call recording of Brown; after this conversation, police began looking for Jones.

¶ 10    DNA from the blood on the SUV's door, and the DNA from the SUV's deployed airbag, implicated Jones–the DNA evidence would be expected in only one of seventy-quadrillion black persons. The airbag DNA was only Jones's profile, not a mix of other people's DNA. The DNA from the cigar butt and the baseball cap matched Brown's DNA.

¶ 11    The State's expert forensic scientists testified that they would only expect a car owner's DNA to be on the airbag if the owner sat in the driver's seat when the airbag deployed. They also stated that scientists could not say with certainty how the DNA got on the airbag or when the blood splattered on the SUV door.

¶ 12    An expert in auto crashes explained that in this model of SUV, the airbag would have been contained inside a vinyl cover, itself inside the steering wheel, and the airbag could not be touched until it was deployed during a crash. The airbag would not have been reusable after deployment. The deployed airbag would be bigger in diameter than the steering wheel, and when the airbag deflated after deployment it would have touched the steering wheel.

¶ 13    The State proposed a nonpattern instruction that "a person may be held responsible for a death that occurs during an escape following the commission of residential burglary." The trial court gave the instruction over Jones's counsel's objection.

¶ 14    The State argued that Jones committed felony murder, in that he was accountable for the residential burglary of Shaw's home and a death that occurred during Jones and Brown's escape from the residential burglary. The jury convicted Jones of first degree murder. In his posttrial motion, Jones argued, among other things, that the State failed to prove him guilty beyond a reasonable doubt and that the trial court erred in giving the nonpattern instruction on escape from residential burglary without specifying that the escape ended when the perpetrators reached a point of safety.

¶ 15    At the sentencing hearing, defendant's mother, Lacrisha Jones, testified that when Jones was 6 years old, his father went to prison; when Jones was 12 years old, she went to prison too. While his parents were incarcerated, Jones lived with his grandmother. During this time, another relative physically abused him. Jones's criminal activities began during his separation from his parents. Jones's counsel argued that his traumatic childhood should be treated as mitigating evidence.

¶ 16    The trial court reviewed Jones's criminal history, which began with a juvenile adjudication for aggravated battery of a pregnant woman and included adult convictions for attempted burglary, aggravated unlawful use of a weapon, reckless conduct, driving with a suspended license, and possession and use of a firearm. The trial court found that Jones's desire to escape responsibility for the burglary brought about Freeman's death. The trial court credited Jones's mother's testimony regarding his traumatic childhood and assessed defendant's rehabilitative potential, the trial court chose a "mid range" sentence of 42 years' imprisonment.

¶ 17    Jones immediately filed a notice of appeal, but this court eventually dismissed that appeal for lack of jurisdiction. In the meantime, Jones filed in the trial court a motion to reduce his sentence, which was denied. Jones later filed another notice of appeal which brings his case before this court.

¶ 18                                    ANALYSIS
¶ 19                           Sufficiency of the Evidence
¶ 20    Jones argues that the evidence was insufficient to prove him guilty of first degree murder. The relevant inquiry, when faced with a challenge to the sufficiency of the evidence, involves, after viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Campbell*, 146 Ill. 2d 363, 374 (1992). As a reviewing court, we will not substitute our judgment for that of the trier of fact on questions concerning the weight of the evidence or the credibility of the witnesses. *Id*. at 375. We will not reverse a criminal conviction unless the evidence is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *Id*.

¶ 21    A person commits first degree murder if, in performing the acts that cause a death, he or she attempts or commits a forcible felony. 720 ILCS 5/9-1(a)(3) (West 2008). A killing that occurs during escape from that forcible felony falls within the scope of the felony-murder rule. *People v. Klebanowski*, 221 Ill. 2d 538, 549 (2006). Residential burglary qualifies as a "forcible felony" under the Criminal Code of 1961 (Code). 720 ILCS 5/2-8 (West 2008).

¶ 22    Legal accountability for another's conduct arises when "[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he [or she] solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." 720 ILCS 5/5-2 (West 2008). The State must present evidence that establishes the defendant shared the criminal intent of the principal or the existence of a common criminal design. *People v. Fleming*, 2014 IL App (1st) 113004, ¶ 52. If two persons engage in a common criminal design, any acts in furtherance of that design committed by one of them becomes an act of all, and all are equally responsible for the consequences. *Id*. A common design may be inferred from the circumstances surrounding the crime. *Id*. In determining accountability, the jury may consider the defendant's presence during the commission of the crime, continued close association with other offenders after the commission, the defendant's failure to report the crime, and the defendant's flight from the scene. *Id*. ¶ 53. The law holds the getaway driver accountable for the crime. *People v. Jones*, 86 Ill. App. 3d 278, 282 (1980).

¶ 23    Jones first attacks the probative value of the DNA evidence to establish he drove the SUV as it fled from Shaw's house. Jones speculated at trial, and again in this appeal, that DNA placed on the steering wheel at an earlier time could have been transferred to the airbag after the airbag deployed through the airbag's contact with the steering wheel, and that the bloodstain on the passenger door could have been placed there before the accident. But a reasonable trier of fact, viewing the evidence in the light most favorable to the State, could conclude that DNA on the airbag belonged to Jones and Jones alone. As to the presence of Jones's blood on the door, a reasonable trier of fact could infer that Jones's face hit the airbag when it deployed, and he suffered an injury during the accident that bled on the SUV before he fled. See *People v. Evans*, 209 Ill. 2d 194, 212 (2004) (jury's function to resolve conflicts

in evidence; jury not required to accept any possible explanation compatible with defendant's innocence). Other circumstantial evidence supports the DNA evidence. The SUV belonged to Jones and he regularly drove it; he and Brown were friends and had communicated the day of the burglary. The jury could conclude, beyond a reasonable doubt, that Brown would not have used Jones's SUV as the getaway car for a residential burglary without Jones's active participation.

¶ 24    Second, Jones challenges the sufficiency of the evidence that he participated in the residential burglary or can be held accountable for Brown's actions. Jones correctly notes that no evidence indicates that he personally burglarized Shaw's home. See 720 ILCS 5/19-3 (West 2008) (person commits residential burglary when knowingly and without authority enters or knowingly and without authority remains within dwelling place of another with intent to commit felony or theft).

¶ 25    But, Jones's accountability for Brown's actions flows naturally from the evidence that Jones drove the SUV as it left Shaw's house after the burglary, tried to elude police, and ultimately crashed. As the getaway driver, Jones played a vital role in transporting the stolen goods and carrying Brown away from the crime scene. See *Jones*, 86 Ill. App. 3d at 282 (getaway driver's knowing participation in crime "closely linked to the crime's success ***. When the plan, express or implicit, calls for a person to sit in a car while the crime is being committed and then to spirit the others away from the scene, the driver's participation is deemed to occur during the commission of the crime."). The evidence of Jones's role as the driver, taken as a whole and viewed in the light most favorable to the State, makes Jones accountable for the residential burglary. See *People v. Daniels*, 51 Ill. App. 3d 545, 547 (1977) (defendant who was found in driver's seat of getaway car close to where burglars attempted to leave building with stolen property, left scene in haste, and was found in driver's seat with burglary tools nearby was proved accountable for burglary).

¶ 26    In addition to the other evidence, the sheer amount of Shaw's property (multiple television sets and a computer) found in Jones's SUV also supports the inference that Jones and Brown shared a common design to commit the residential burglary. Brown hardly could have hidden these items from Jones's eyes, or convinced Jones that Brown's removal of these items from Shaw's home was aboveboard, especially after Brown broke into Shaw's home through the back door. Thus, this is not a case like *People v. Dennis*, 181 Ill. 2d 87 (1998), where the "getaway driver" did not realize his passenger had committed a robbery until after the passenger reentered the driver's car. See *id*. at 108 (legal accountability satisfied where driver knowingly participates in crime by driving getaway car).

¶ 27    The police saw the SUV leave the scene of the burglary and, on exiting the alley, it immediately accelerated, went the wrong way down a one-way street, and sped through multiple intersections while police chased after it. This supports the inference that Jones participated in the burglary from start to finish as the getaway driver. See *People v. Ruckholdt*, 122 Ill. App. 3d 7, 12 (1984) (defendant's conduct at scene of crime and thereafter demonstrated his participation in burglary rather than as innocent bystander).

¶ 28    Jones's legal accountability for Brown's actions in the residential burglary, along with the evidence that he drove the SUV during their flight from police, also sufficiently shows Jones's guilt for felony murder, because the actions causing Freeman's death occurred during that flight. See *People v. Burke*, 85 Ill. App. 3d 939, 942 (1980) (where defendants suspected of robbery within four blocks and few minutes of crime, evidence sufficient to support

inference that codefendant's speeding and reckless driving part of escape attempt, and all defendants guilty of felony murder).

¶ 29                                                    Jury Instruction

¶ 30         Jones argues that the trial court erred in giving a nonpattern instruction. That instruction stated that Jones could be found guilty of first degree murder if he was responsible for a death occurring during his escape from the residential burglary. Jones maintains that the jury should have been instructed that he was responsible only if the death occurred before he reached a place of safety. (The State erroneously argues that this claim can be reviewed only for plain error; however, defendant both contemporaneously objected to this instruction and raised the issue in his posttrial motion. The State also argues that the instruction has already been approved by this court in codefendant Brown's appeal. But, Brown challenged the jury instructions on the different ground that it failed to define "foreseeable." *People v. Brown*, 2015 IL App (1st) 131552, ¶ 50. Thus, our holding in *Brown* does not control.)

¶ 31         Jury instructions must explain the correct principles of law that apply to the evidence, and not be misleading or confusing. *People v. Valadovinos*, 2014 IL App (1st) 130076, ¶ 23. When a jury does not receive proper guidance through instructions, it cannot perform its constitutional functions and thereby violates the defendant's right to a fair trial. *Id*. To warrant reversal, a defendant must show that the claimed instructional error " 'creates a serious risk that the jurors incorrectly convicted the defendant because they did not understand the applicable law, so as to severely threaten the fairness of the trial.' " *People v. Durr*, 215 Ill. 2d 283, 299 (2005) (quoting *People v. Hopp*, 209 Ill. 2d 1, 8 (2004)). Generally, we review jury instructions for an abuse of discretion. *Valadovinos*, 2014 IL App (1st) 130076, ¶ 24. But, we review *de novo* whether the jury instructions accurately explain the law. *Id*.

¶ 32         Where no pattern jury instruction exists on a subject, the trial court has the discretion to give a nonpattern instruction. *People v. Hudson*, 222 Ill. 2d 392, 400 (2006). The nonpattern instruction should be "simple, brief, impartial, and free from argument." Ill. S. Ct. R. 451 (eff. Apr. 8, 2013).

¶ 33         The jury instruction accurately stated the principle that "[a] killing that occurs during the course of an escape from a forcible felony is within the operation of the felony-murder rule." *Klebanowski*, 221 Ill. 2d at 549. Jones argues, however, that the trial court should have added language indicating that his responsibility extends only so far as the death occurs before he reached a place of safety.

¶ 34         Jones is correct, insofar as the escape from the residential burglary continues until the offenders reach a "place of safety." *People v. Lowery*, 178 Ill. 2d 462, 472 (1997). But, the "place of safety" language merely defines the end point of the escape from a forcible felony. It is not an element of the crime. Thus, Jones was not deprived of a fair trial. *Cf. People v. Green*, 225 Ill. 2d 612, 622 (2007) (to ensure fair trial, trial court must instruct jury on elements of offense, presumption of innocence, and burden of proof).

¶ 35         Even if it considered an element, the error would still be harmless. The trial evidence established that the actions that caused Freeman's death occurred in the midst of Jones's high-speed flight from the police. See *People v. Thurow*, 203 Ill. 2d 352, 368-69 (2003) (failure to instruct on element reviewed for harmless error; where evidence in support of omitted element "uncontested and overwhelming," failure to instruct jury on that element

- 6 -

harmless (quoting *Neder v. United States*, 527 U.S. 1, 18-19 (1999))). When Jones's SUV caused the accident that killed Freeman, he had not reached a "place of safety." *Cf. People v. Moore*, 375 Ill. App. 3d 234, 240 (2007) (where defendant stole car a day before leading police on high-speed chase that led to death of another motorist, evidence established that defendant had reached place of safety before collision and thus defendant not guilty of felony murder). Jones's actions after the crash–running away from the debris of his SUV to elude the police–further establishes that the escape was ongoing. See *Lowery*, 178 Ill. 2d at 472 (defendant's action of turning coat inside-out to avoid police detection demonstrates he did not believe he had reached place of safety during escape from robbery). Thus, the error was harmless.

¶ 36                                    Sentencing

¶ 37      Jones argues that his 42-year sentence is excessive in light of the mitigation evidence: the incarceration of both parents during a portion of his childhood, and his suffering physical abuse at the hands of another relative. (The State erroneously argues that the issue was forfeited because defendant did not file a motion to reconsider sentence; however, he did file the motion.)

¶ 38      All sentences must reflect the seriousness of the offense committed and the objective of rehabilitating offenders to useful citizenship. *People v. Cooper*, 283 Ill. App. 3d 86, 95 (1996). The trial court considers all factors in mitigation and aggravation. *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). We presume a trial court evaluates the relevant factors in mitigation before it, and that presumption cannot be overcome without affirmative evidence of the sentencing court's failure to do so. *People v. Flores*, 404 Ill. App. 3d 155, 158 (2010).

¶ 39      A reviewing court may only reduce a sentence when the record shows that the trial court abused its discretion. *People v. Streit*, 142 Ill. 2d 13, 19 (1991). The reviewing court may not reverse the sentencing court just because it may have weighed the relevant factors differently. *Id.*

¶ 40      The sentencing court reviewed Jones's criminal history and specifically credited the proffered mitigation evidence. The sentencing court also stated that in imposing a sentence in the middle of the applicable range, it took into account Jones's rehabilitative potential. Because the court contemplated all the relevant factors, we will not reweigh the evidence. *People v. Snyder*, 2011 IL 111382, ¶ 36 (reviewing court gives substantial deference to trial court's sentencing decision because trial judge, having observed defendant and proceedings, is in much better position to weigh defendant's credibility, demeanor, moral character, mentality, environment, habits, and age). We affirm the sentence.

¶ 41      Affirmed.