2021 IL App (1st) 191439-U

No. 1-19-1439

Order filed December 20, 2021

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 19485 |
| | ) | |
| BRANDON CARTER, | ) | Honorable |
| | ) | Frank G. Zelezinski, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Hyman and Justice Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*: Because the trial court did not abuse its discretion in sentencing defendant, he cannot establish plain error or ineffective assistance of counsel.

¶ 2    Following a jury trial, defendant Brandon Carter was found guilty of three counts of attempted murder (720 ILCS 5/8-4(a) (West 2012); 720 ILCS 5/9-1(a)(1) (West 2012)) and sentenced to an aggregate prison term of 60 years. On appeal, defendant contends that his sentence is excessive and should be reduced to the statutory minimum of 52 years. We affirm.

¶ 3    Defendant and co-offenders Quinton Johnson, Dwayne Robinson, and Donyall Garrett were each charged in the same indictment with the attempted first degree murders of Christan Pickett, Capri Pickett, and David Shirley.[1] Relevant here, counts III, XI, and XIII for attempted murder alleged that defendant personally discharged a firearm at Christan, Capri, and Shirley.[2]

¶ 4    On April 7, 2012, Christan was with his aunt Capri and her boyfriend Shirley. After 11 p.m., Christan and Shirley picked Capri up from work and then drove in Shirley's vehicle to purchase cigarettes at the 139th and Grace projects in Robbins, Illinois. Shirley drove, Capri sat in the front passenger seat, and Christan sat in the backseat. Once there, Shirley parked and Christan exited to buy the cigarettes. He returned and gave a cigarette to Capri. As Christan stood outside the vehicle, four men approached. He recognized defendant and Garrett, whom he knew by their nicknames "Droopy" and "Face."

¶ 5    The men surrounded Christan and "pulled their guns out." Garrett said that "Easy" told him Christan "snitched," and Garrett should "take it up" with Christan. Defendant knocked on Capri's window with a firearm and told Shirley to turn the vehicle off or he would "air it out." As Shirley drove away, defendant fired through the window at Capri. Christan ran as "everyone" shot at him. On April 12, 2012, Christan spoke to police officers and identified defendant and Garrett in separate photo arrays. On April 18, 2012, he spoke with a detective and an assistant State's attorney (ASA), and identified photographs of defendant and Garrett.

---

[1] For clarity, we will refer to Christan Pickett and Capri Pickett by their first names.

[2] Johnson was tried and acquitted in a bench trial prior to the start of defendant's trial. Garret, who was tried simultaneously with defendant before the same jury, was found guilty of three counts of attempted murder, and we affirmed on direct appeal. See *People v. Garrett*, 2019 IL App (1st) 162908-U. Neither Garrett, Johnson, nor Robinson is a party to this appeal.

¶ 6    Christan identified defendant and Garrett in the surveillance video taken in the parking lot where the shooting occurred. The video showed four men surrounding a vehicle, the vehicle driving away as a man runs in another direction, and several men shooting firearms.

¶ 7    Capri testified that when Christan returned from buying the cigarettes, a group of four to six men quickly approached from across the street. She identified defendant and Garrett, whom she knew as "Droopy" and "Face," as two of the men. Garrett approached Christan and said, "Officer 'Easy' said you snitched on me and he took five grand from me and he told me to take it up with you." All of the men drew firearms. Defendant tapped on Capri's window with a firearm, and said to "cut this mother f*** car off or we [are] going to blow it up." Capri ducked, and defendant fired a shot that entered the back of her arm and her lung. As Shirley drove away, Capri heard numerous gunshots and felt the vehicle's glass breaking. Capri was transported by ambulance to Christ Hospital, where a chest tube was inserted to drain fluid from her lungs. As a result of being shot, she has scars and marks on her arm and back. The doctors were unable to remove the bullet from her lung. On April 12, 2012, Capri identified defendant and Garrett in separate photo arrays.

¶ 8    Shirley identified defendant and Garrett as two of the five men that approached his vehicle from both sides. Garrett told Christan, who was standing on the passenger side of the vehicle, " 'Easy said you was out here snitching on me, I come to take it up with you.' " The other men then moved to the same side of the vehicle as Garett and Christan. Shirley saw defendant, Garrett, and another man draw firearms. Defendant tapped on the window with his firearm and said to " '[t]urn your mother*** car off.' " Shirley activated his headlights, and defendant began shooting and hit Capri. As Shirley drove away, he heard gunshots and the air leaving his tires. The back

window of the vehicle was "shot out," but he did not see who was shooting. He realized his head was bleeding, reached up, and felt a bullet "sitting on top of [his] head." Shirley later identified defendant and Garrett in separate photo arrays.

¶ 9     Illinois State Police sergeant Cary Morin testified that he processed Shirley's vehicle on April 27, 2012, observed bullet holes, and recovered five bullets. The parties stipulated that a forensic scientist examined the recovered bullets and concluded that they were .9-millimeter or .38-caliber bullets fired from at least two different weapons.

¶ 10     The jury found defendant guilty of three counts of attempted murder during which he personally discharged a firearm. Defendant's pre-sentence investigation (PSI) report showed that he was 28 years old and had prior convictions for aggravated unlawful use of a weapon and manufacture and delivery of a controlled substance. Defendant was raised by his mother and described his childhood as "lovely." He previously worked in construction, self-trained as a barber, and " 'schooled [himself] *** on his own.' " Defendant had "good" relationships with his four children. At the time of the PSI, defendant was wheelchair-bound due to a fall in jail and was scheduled for back surgery.

¶ 11     At the sentencing hearing, the State argued that defendant participated in an "ambush" meant to kill Christan and any witnesses, resulting in Capri being shot and seriously injured. Defense counsel asked for a minimum sentence.

¶ 12     In allocution, defendant asserted his innocence and stated that a woman he was "with" was unwilling to testify because she was currently involved with someone else. Defendant denied having a "problem" with Capri or Christan and did not understand why the State's witnesses lied at trial. Defendant also mentioned that he had to explain to his children what happened.

¶ 13    The court indicated that it had considered all of the factors in aggravation and mitigation and reviewed the PSI. Although defendant's criminal history did not include convictions for violent crimes, this case involved a firearm and "gunshots were either fired or actually struck people." The trial court imposed concurrent prison terms of 26 years for the attempted murder of Christan and 28 years for the attempted murder of Shirley. The court found that Capri suffered a severe bodily injury, and therefore sentenced defendant to a consecutive 32-year sentence on that count, for a total of 60 years in prison. Defendant did not file a motion to reconsider sentence.

¶ 14    On appeal, defendant contends that his 60-year aggregate sentence is excessive and should be reduced to the statutory minimum of 52 years, which would provide adequate retribution and the possibility of release at an age when he would be unlikely to reoffend. Defendant acknowledges that he has forfeited this issue, but requests plain error review. In the alternative, he contends he was denied effective assistance by trial counsel's failure to file a motion to reconsider sentence.

¶ 15    To preserve a sentencing error claim, the defendant must make a contemporaneous objection and raise the issue in a postsentencing motion. *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). The plain error doctrine permits a reviewing court to consider unpreserved error when (1) the evidence is close, regardless of the seriousness of the error; or (2) the error is serious, regardless of the closeness of the evidence. *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005).

¶ 16    In the context of a sentencing hearing, a defendant must show that an error occurred and either (1) the evidence at the hearing was closely balanced, or (2) the error was so egregious that it denied the defendant a fair hearing. *Hillier*, 237 Ill. 2d at 545. The first step in plain error review is to determine whether an error occurred. See *People v. Hood*, 2016 IL 118581, ¶ 18 (without

error, there can be no plain error). A defendant has the burden to establish plain error. See *People v. Thompson*, 238 Ill. 2d 598, 613 (2010).

¶ 17  The Illinois Constitution requires that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. The trial court must consider "all factors in aggravation and mitigation, including, *inter alia*, the defendant's age, demeanor, habits, mentality, credibility, criminal history, general moral character, social environment, and education, as well as the nature and circumstances of the crime and of defendant's conduct in the commission of it." *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). Where a sentence falls within the statutorily mandated guidelines, it is presumed to be proper and will be overturned only where there is an affirmative showing that the sentence departs significantly from the "spirit and purpose of the law" or is "manifestly disproportionate to the nature of the offense." *People v. Stacey*, 193 Ill. 2d 203, 210 (2000); see also *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). Absent some indication to the contrary, other than the sentence itself, a reviewing court presumes the trial court considered all mitigating evidence presented. *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 19. A defendant's rehabilitative potential is not entitled to greater weight than the seriousness of the offense. *People v. Reed*, 2018 IL App (1st) 160609, ¶ 62. Because the trial judge is in a superior position to observe defendant and the proceedings and assess such factors as defendant's credibility, demeanor, and mentality (*People v. Snyder*, 2011 IL 111382, ¶ 36), we review the trial court's decision for an abuse of discretion. *Stacey*, 193 Ill. 2d at 209.

¶ 18  Here, defendant was found guilty of three counts of attempted murder during which he personally discharged a firearm. See 720 ILCS 5/8-4(c)(1) (West 2012). The applicable sentencing

range was 6 to 30 years in prison for each attempted murder count (see 730 ILCS 5/5-4.5-25(a) (West 2012)), plus a 20-year mandatory firearm enhancement for personally discharging a firearm while committing the offenses (see 730 ILCS 5/5-8-1(a)(1)(d)(ii) (West 2012)). The trial court imposed sentences of 6, 8, and 12 years for the attempted murders, adding a 20-year sentencing enhancement on each count.

¶ 19    The record shows the court considered all the factors in mitigation and aggravation, as well as the PSI in imposing sentence. The court specifically noted in mitigation that defendant had children and no prior felony convictions for violent crimes. See *People v. Willis*, 2013 IL App (1st) 110233, ¶ 123 ("If mitigating evidence is presented to the trial court, we are to presume, absent some indication to the contrary, other than the sentence itself, that the trial court considered it."). However, the court also considered the nature of the offense, in which defendant and several other armed accomplices instigated the conflict by surrounding Shirley's vehicle, and defendant personally threatened to "blow *** up" the vehicle. As the victims attempted to flee, defendant and his accomplices opened fire, wounding Shirley and seriously injuring Capri. Under these circumstances, imposing a minimum sentence for the attempted murder of Cristan and two and six years above the minimum for the attempted murders of Shirley and Capri was not an abuse of discretion.

¶ 20    Defendant argues that a reduction to the statutory minimum of 6 years on all counts would comport with the Illinois Constitution's "mandate" that sentences should reflect the goal of restoring an offender to useful citizenship. While defendant is correct that a sentence should reflect the goal of restoring the offender to useful citizenship (*People v. Jones*, 2015 IL App (1st) 142597, ¶ 38), the most important factor in sentencing is the seriousness of the offense, not mitigating

evidence (*People v. Harmon*, 2015 IL App (1st) 122345, ¶ 123). Moreover, the existence of mitigating factors does not require the imposition of a minimum sentence or prevent the imposition of the maximum sentence. *Id.*

¶ 21    Ultimately, defendant asks us to reweigh the mitigating factors and substitute our judgment for that of the trial court, which we will not do. See *Jones*, 2015 IL App (1st) 142597, ¶ 40. Because three of defendant's attempted murder sentences fall at or near the minimum of the applicable sentencing range, we cannot say that they vary greatly from the spirit and purpose of the law or are manifestly disproportionate to the nature of the offense. *Alexander*, 239 Ill. 2d at 212.

¶ 22    As defendant has failed to establish error, there can be no plain error and his procedural forfeiture must be honored. *Hood*, 2016 IL 118581, ¶ 18; see also *People v. Williams*, 2017 IL App (1st) 150795, ¶ 40 ("There was no error, let alone 'plain' error, and so we need not go further in the plain error analysis.").

¶ 23    For the same reason, defendant's claim that he was denied effective assistance because trial counsel failed to preserve his sentencing claim also fails. A defendant alleging ineffective assistance must prove prejudice, such that "absent counsel's deficient performance there is a reasonable probability that the result of the proceeding would have been different." *People v. Evans*, 209 Ill. 2d 194, 219-20 (2004) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984)). As the trial court did not abuse its discretion, defendant cannot demonstrate any reasonable probability that the result would have been different had trial counsel properly preserved the issue. See, *e.g.*, *People v. Brown*, 2017 IL App (1st) 142877, ¶ 66 (counsel was not ineffective for failing to file motion to reconsider sentence where there was no reasonable probability that the sentence would have been different had the motion been filed).

¶ 24    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 25    Affirmed.