2024 IL App (1st) 221094-U

No. 1-22-1094

Order filed January 10, 2024

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 CR 7064 |
| | ) | |
| DANIEL MARES, | ) | Honorable |
| | ) | Thomas J. Hennelly, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE D.B. WALKER delivered the judgment of the court.
Presiding Justice Reyes and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1  *Held*: We affirm defendant's eight-year sentence for aggravated driving under the influence of alcohol over his contention that the trial court did not adequately consider the evidence in mitigation and his rehabilitative potential.

¶ 2  Defendant  Daniel Mares entered an open plea of guilty to one count of aggravated driving under the influence of alcohol (DUI), and was sentenced to eight years in prison.[1] See 625 ILCS

---

[1] Defendant is also referred to as Daniel Mare in the record. We adopt the spelling of the notice of appeal.

5/11-501(a)(1), (d)(1)(F) (West 2020). On appeal, defendant contends that his sentence is excessive because the trial court did not give sufficient weight to the evidence in mitigation and his potential for rehabilitation. We affirm.

¶ 3    Defendant was charged by indictment with four counts of aggravated DUI and one count of reckless homicide arising out of a vehicle accident on April 14, 2020, in which Damon Pallanti was killed.

¶ 4    On April 12, 2022, the State told the trial court that defendant would enter an open plea of guilty to count I of the indictment for aggravated DUI. The trial court stated that on the next date, it would hold a sentencing hearing and determine defendant's sentence. The court read the charge to defendant, who stated that he understood the charge and entered a guilty plea. The State related the factual basis for the plea, including that defendant did not have a valid driver's license on the date of the offense. The trial court then asked defendant whether he understood the potential sentencing range of 3 to 14 years in prison and defendant stated that he did. The court accepted the factual basis for the plea and defendant's guilty plea, and continued the cause for sentencing.

¶ 5    At sentencing, Chicago police officer Dylan Voitik testified that around 7:20 p.m. on April 14, 2020, he and his partner were on 100th Street in Chicago when they observed a red truck "bouncing" over railroad tracks and swerving between lanes. Voitik swerved and honked at the driver, whom he identified in court as defendant. There was also a passenger. After Voitik honked, defendant looked up and "counter-steered." The vehicle exited the road, drove through a fence, and hit a tree. Voitik estimated that the vehicle was traveling around 50 miles per hour. Voitik and his partner exited their vehicle to provide assistance. The vehicle's passenger was unresponsive,

and Voitik believed the passenger was pronounced dead at the scene. Voitik described defendant as "irritated" and hostile.

¶ 6 The State moved to admit certain surveillance footage, which the State asserted depicted the accident, into evidence. The trial court admitted the footage and published it. This footage is not included in the record on appeal. Voitik narrated the footage, which he asserted depicted the events to which he testified. Voitik further testified that he and his partner wore body cameras that evening and the State sought to admit this footage into evidence. The trial court admitted the footage and both disks were published. The body camera footage is not included in the record on appeal.

¶ 7 Chicago police detective Ivan Romo testified that at the University of Chicago Medical Center, he learned that defendant's blood serum level was 0.232, which converts to approximately 0.197 breath alcohol content. Romo then spoke to defendant, whom he identified in court, and their conversation was recorded by an officer's body camera. Romo spoke to defendant again on July 11, 2020, after defendant was arrested. Defendant told Romo that he "didn't really remember much of what happened."

¶ 8 The State sought to admit photographs of the scene including ones depicting a bottle of vodka, blood on the passenger seat, and "hair material" inside a shattered windshield. The trial court admitted these photographs. They are not included in the record on appeal. The State also sought to admit footage of defendant's statements. The trial court admitted the footage and it was published. This footage is not included in the record on appeal.

¶ 9    The State finally sought to admit certified copies of defendant's prior convictions for attempted residential burglary and aggravated unlawful use of a weapon (AUUW), which the court allowed.

¶ 10    The State then published Pallanti's father's victim impact statement, which was a non-verbatim written summary of a conversation between Pallanti's father and an assistant State's attorney. During the conversation, Pallanti's father stated that it was too painful to attend court or draft a statement, that his son's death was "the worst thing that could have ever happened," and that he thinks of his son "[e]very minute of every day."

¶ 11    The defense presented Jorge Mares, defendant's brother, who testified that he had noticed a difference in defendant since defendant began receiving mental health services in jail and that defendant was sick and needed help.[2] Jorge testified that he and defendant had "similar struggles." When Jorge was 18 years old, he struck and killed a child with a vehicle. Jorge testified that he and defendant spoke almost every day and that defendant expressed remorse for the accident that killed Pallanti. Jorge did not think a longer sentence would make a difference to defendant's regrets, as defendant must live knowing that he had "broken" a family.

¶ 12    Defendant testified that he was "deeply sorry" for the pain caused by his "irresponsible actions." He did not mean for this to happen to Pallanti, and asserted that he was "not in the right state of mind" and was "very intoxicated" at the time of the accident. He prayed for forgiveness every day. He acknowledged having an alcohol problem and that he had used drugs and alcohol while on house arrest to battle depression, anxiety, and "traumatic stress." Defendant had learned about his addictions through the mental health program in jail, and now realized what he did was

_____

[2] For clarity, we refer to Jorge Mares by his first name.

wrong, and he would "never ever" drink and drive again. He planned to make better choices and decisions and, when asked if he believed that more years in jail would improve his ability to not drink, he replied: "Yes."

¶ 13    The trial court received defendant's presentence investigation report (PSI), which stated that defendant was born on January 21, 1989. He was raised by his mother, to whom he remained close, but his father was not consistently present. While defendant stated that his childhood was stable and his basic needs were met, he also described it as difficult. His parents were alcoholics and he experienced physical, sexual, and mental abuse. Defendant first drank alcohol at "about the age of two" and was an alcoholic by age 18. He stated that his "whole family struggles with alcohol" with the exception of one sibling. Defendant believed that he had a high school diploma and that he should have been placed in special education classes at school. He was previously employed and had a daughter with whom he had no contact. He previously belonged to the Latin Counts gang.

¶ 14    The PSI stated that defendant reported that he currently had a broken shoulder and suffered from asthma. He had seen a mental health professional, was diagnosed with depression and anxiety, and had been prescribed medication. He had used marijuana, cocaine, Xanax, "Acid," and ecstasy, and previously attended substance abuse treatment programs and Alcoholics Anonymous as part of his parole. Defendant stated that the mental health program in jail "changed him." Defendant had prior convictions for attempted burglary, AUUW, and criminal trespass to land. Additionally, he had a pending assault case.

¶ 15    In the PSI, defendant gave his version of the incident. According to defendant, he and Pallanti drank at a party, and left in Pallanti's truck with Pallanti driving. After 45 minutes, Pallanti

began driving in the wrong lane, so defendant drove instead. Defendant stated that he hit a tree about a block from home. At that time, defendant was "off his required medication." When defendant awoke in a hospital, he learned Pallanti died. Defendant expressed remorse and that he regretted driving drunk. He asserted that going forward, he planned to make "better choices and decisions."

¶ 16    After arguments in aggravation and mitigation, the trial court continued the case in order to review the exhibits. At the next court date, defendant spoke in allocution. Defendant stated that he was "deeply sorry" for his "irresponsible actions," and that he asked God for forgiveness every day. He took "full accountability" and chose an open plea of guilty to "beg" the court for mercy and leniency. Defendant further stated that his time in jail opened his eyes to what was "really important" and that he would make better choices when he was released. Defendant apologized to Pallanti's family and his family. The case was continued for sentencing.

¶ 17    On July 19, 2022, the trial court stated that it considered the evidence that was presented at the sentencing hearing, the PSI, the evidence and statutory factors in aggravation and mitigation, the financial impact of incarceration, the parties' arguments, the victim impact statement, defendant's statement, Jorge's testimony, and defendant's potential for rehabilitation. The court acknowledged that no matter the sentence, the parties were "faced with what happened." While the court had "no doubt" that defendant acted recklessly rather than intentionally, defendant intended to consume alcohol in "extreme amounts" and got "behind the wheel" when he had "no business" driving. The court told defendant that he played "vehicular Russian roulette" and the court had to consider that defendant survived and his friend did not.

¶ 18    The court noted that the applicable sentencing range was 3 to 14 years. The court did not believe that the minimum sentence was appropriate as it was not defendant's first brush with the law. The court noted that defendant was previously sentenced to one year in prison for a firearm case and to three years for attempted residential burglary. The court disagreed, however, with the State's request for a 12-year sentence "given what happened." The court took defendant "at his word" that he was sorry, and noted that defendant entered a guilty plea, which indicated "some" remorse. The court also noted that defendant received mental health treatment, which he had "profited" from, and that defendant could still "make a difference" if he chose to do so. The court therefore imposed an eight-year sentence.

¶ 19    Defendant filed a motion to reconsider, alleging, relevant here, that the sentence did not reflect the "phycological [*sic*] condition" of his "mind" and his need for mental health treatment, and that his lack of "history of such activity" warranted a lesser sentence. The trial court denied the motion.

¶ 20    On appeal, defendant contends that his sentence is excessive because the trial court did not give sufficient weight to the evidence in mitigation and his potential for rehabilitation.

¶ 21    Initially, the State argues that defendant has forfeited consideration of his arguments on appeal for failing to raise them with specificity in his motion to reconsider sentence.

¶ 22    Defendant responds that the motion to reconsider sentence alleged that his sentence did not reflect his need for mental health treatment and was excessive in light of his background. He further argues that if the motion to reconsider sentence did not adequately preserve his claims for appeal, this court should review his claims for plain error. See *People v. Thompson*, 238 Ill. 2d

598, 613 (2010) (this court may consider unpreserved error when the evidence is close, regardless of the seriousness of the error, or if the error is serious, regardless of the closeness of the evidence).

¶ 23 In the case at bar, defendant's motion to reconsider sentence adequately raised his claim that his sentence was excessive in light of his mental health and lack of criminal background. That said, as we explain below, the trial court did not abuse its discretion in sentencing him to eight years in prison.

¶ 24 When determining a sentence, "the trial court has broad discretionary powers." *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). We give substantial deference to the trial court because "the trial judge, having observed the defendant and the proceedings, is in a much better position to consider factors such as the defendant's credibility, demeanor, moral character, mentality, environment, habits, and age." *People v. Snyder*, 2011 IL 111382, ¶ 36. Accordingly, a sentence will not be disturbed absent an abuse of discretion. *Stacey*, 193 Ill. 2d at 209-10. An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court. *People v. Johnson*, 347 Ill. App. 3d 570, 574 (2004).

¶ 25 The Illinois Constitution requires that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. When balancing "the retributive and rehabilitative purposes of punishment," the trial court must carefully consider "all factors in aggravation and mitigation, including, *inter alia*, the defendant's age, demeanor, habits, mentality, credibility, criminal history, general moral character, social environment, and education, as well as the nature and circumstances of the crime and of defendant's conduct in the commission of it." *People v.*

*Quintana*, 332 Ill. App. 3d 96, 109 (2002). Where a sentence falls within the statutorily mandated guidelines, it is presumed to be proper. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46. A sentence within statutory limits will be deemed "excessive" and an abuse of discretion when it is "greatly at variance with the spirit and purpose of the law" or is "manifestly disproportionate to the nature of the offense." *Stacey*, 193 Ill. 2d at 210. Absent some indication to the contrary, other than the sentence itself, a reviewing court presumes the trial court considered all mitigating evidence presented. *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 19.

¶ 26    Here, defendant entered an open plea of guilty to aggravated DUI, a Class 2 felony with a sentencing range of 3 to 14 years in prison. See 625 ILCS 5/11-501(a)(1), (d)(1)(F), (d)(2)(G) (West 2020). The trial court imposed an eight-year sentence after considering the evidence in aggravation and mitigation. As this sentence is within the statutory range, it is presumed proper. *Knox*, 2014 IL App (1st) 120349, ¶ 46.

¶ 27    Defendant, however, argues that the sentence is excessive given the "substantial pieces of mitigation," including that he pled guilty and showed remorse. Additionally, defendant argues that the trial court did not consider that he "endured" a troubling childhood, struggled with mental illness, and had "significant" rehabilitative potential. Defendant also asserts that the trial court gave "outsized import" to his criminal history.

¶ 28    As mentioned, absent some indication to the contrary, other than the sentence itself, we presume the trial court properly considered all relevant mitigation evidence presented. *Sauseda*, 2016 IL App (1st) 140134, ¶ 19. That presumption may be overcome by "affirmative evidence" that the sentencing court failed to consider factors in mitigation. *People v. McWilliams*, 2015 IL App (1st) 130913, ¶ 27. In this case, defendant has not identified such evidence.

¶ 29    At sentencing, the trial court stated that it reviewed the evidence, the PSI, the evidence and statutory factors in aggravation and mitigation, the financial impact of incarceration, the parties' arguments, and the victim impact statement. See *People v. Babiarz*, 271 Ill. App. 3d 153, 164 (1995) ("Where the sentencing court examines a presentence report, it is presumed that the court considered the defendant's potential for rehabilitation."). The court specifically mentioned defendant's statement, Jorge's testimony, and defendant's potential for rehabilitation. The court had "no doubt" that defendant did not intentionally cause the accident, but noted that he intentionally consumed an "extreme" amount of alcohol and then drove a vehicle, resulting in his friend's death.

¶ 30    The trial court noted that neither the minimum nor maximum sentences were appropriate in this case. In discounting the minimum sentence, the court noted that defendant had been sentenced to prison on two prior occasions, and in discounting the maximum sentence, the court noted that defendant expressed remorse, entered a guilty plea, and was undergoing mental health treatment. The court concluded that defendant could still "make a difference" with his life and imposed an eight-year sentence, just short of the midpoint of the statutory range. Here, the trial court noted the factors in aggravation and mitigation that it considered, including defendant's remorse and his mental health treatment, and that his actions resulted in his friend's death. See *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 123 ("the most important sentencing factor is the seriousness of the offense" and a "court is not required to give greater weight to mitigating factors than to the seriousness of the offense"). Additionally, while the trial court stated that it considered defendant's rehabilitative potential, a defendant's rehabilitative potential is not entitled to greater weight than the seriousness of the offense. See *People v. Reed*, 2018 IL App (1st) 160609, ¶ 62.

¶ 31    To the extent that defendant argues that the trial court did not adequately consider his struggles with mental health and alcohol in mitigation, we note that this evidence is not inherently mitigating. See *People v. Madej*, 177 Ill. 2d 116, 139 (1997) (noting that "information about a defendant's mental or psychological impairments is not inherently mitigating" (internal quotation marks omitted)); *People v. Montgomery*, 192 Ill. 2d 642, 674 (2000) ("testimony about a defendant's history of alcohol and drug abuse is not necessarily mitigating" and while the defendant "might urge this evidence in mitigation, as an explanation for his misconduct, the sentencer is not required to share the defendant's assessment of the information").

¶ 32    Defendant asserts that his criminal history is non-violent and that the trial court afforded it "outsized import," but a defendant's criminal activity may be considered in aggravation at sentencing. See 730 ILCS 5/5-5-3.2(a)(3) (West 2020). Moreover, considering the length of the trial court's remarks at sentencing, the mention of defendant's prior convictions and sentences was brief and in the context of the court's determination that a minimum sentence was not appropriate. See *People v. Evangelista*, 393 Ill. App. 3d 395, 398-99 (2009) (noting that "criminal history alone" may "warrant sentences substantially above the minimum").

¶ 33    Ultimately, defendant identifies nothing in the record, other than the fact the trial court did not impose the minimum sentence, as support for his argument that the trial court did not consider the mitigating evidence presented. However, the existence of mitigating factors does not require the minimum sentence or prohibit the maximum sentence. *Harmon*, 2015 IL App (1st) 122345, ¶ 123. While a sentence should reflect both the seriousness of the offense and the objective of restoring the offender to useful citizenship (*People v. Jones*, 2015 IL App (1st) 142597, ¶ 38), the

most important factor in sentencing, as noted, involves the seriousness of an offense (*Harmon*, 2015 IL App (1st) 122345, ¶ 123).

¶ 34 Essentially, defendant asks us to reweigh the evidence and conclude that the statutory minimum sentence is warranted. This we cannot do. See *People v. Fern*, 189 Ill. 2d 48, 53 (1999) ("In considering the propriety of a sentence, the reviewing court must proceed with great caution and must not substitute its judgment for that of the trial court merely because it would have weighed the factors differently."). Based on the record before us, we cannot say the trial court's imposition of an eight-year sentence was an abuse of discretion. See *People v. Crenshaw*, 2011 IL App (4th) 090908, ¶ 24 ("The balance to be struck amongst the aggravating and mitigating factors is a matter of judicial discretion that should not be disturbed absent an abuse of discretion.").

¶ 35 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 36 Affirmed.