# Illinois Official Reports

## Appellate Court

*People v. Valadovinos*, 2014 IL App (1st) 130076

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. IGNACIO VALADOVINOS, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-13-0076 |
| Filed | November 5, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from defendant's conviction and sentence for attempted first degree murder, the appellate court rejected defendant's contention that the trial court improperly instructed the jury on the charge by failing to tell the jury to find defendant specifically intended to kill the victim rather than "an individual," and defendant's sentence was upheld, since defendant did not object to the instruction or raise the issue in his posttrial motion and there was no plain error, the sentence was within the statutory range, and no impermissible aggravating factors were considered; however, the cause was remanded with directions to correct the mittimus to reflect the correct credit for presentence custody. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CR-5866; the Hon. Arthur F. Hill, Jr., Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier and Tonya Joy Reedy, both of State Appellate
Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Jocelyn M. Schieve
and Mary P. Needham, Assistant State's Attorneys, of counsel), for
the People.

Panel      JUSTICE HYMAN delivered the judgment of the court, with opinion.
Presiding Justice Pucinski and Justice Mason concurred in the
judgment and opinion.

## OPINION

¶ 1      A jury convicted defendant, Ignacio Valadovinos, of attempted first degree murder while personally discharging a firearm (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2010)) in a shooting outside a bar at 25th Street and California Avenue. Valadovinos fired five gunshots toward Ernesto Fernandez and sped off, leading to a car chase and foot pursuit by Chicago police officers.

¶ 2      Valadovinos raises three issues on appeal: (i) the trial court improperly instructed the jury on the attempted first degree murder charge by not telling the jury to find Valadovinos specifically intended to kill Ernesto Fernandez rather than "an individual"; (ii) in sentencing Valadovinos to 43 years in prison, the trial court failed to give proper weight to the mitigating evidence and impermissibly considered aggravating factors actually inherent in the offense; and (iii) he was shorted on credit for days spent in presentencing custody.

¶ 3      We affirm Valadovinos's conviction and sentence and instruct the circuit clerk to correct the mittimus. First, while Valadovinos failed to object to the attempted first degree murder instruction and did not raise the issue in his posttrial motion, the trial court committed no plain error in the instructions. Second, the trial judge imposed a sentence within the statutory range, and this decision is entitled to great deference and weight. Moreover, the trial court did not consider impermissible aggravating factors. Finally, Valadovinos correctly asserts that his mittimus should be adjusted to reflect a presentence credit of 692 days in custody.

¶ 4      BACKGROUND

¶ 5      In the early hours of February 28, 2010, a fight involving about 10 people broke out in a bar near 25th Street and California Avenue. Bar security pushed the brawlers out to the street. Among the group were Ernesto Fernandez, his brother Carlos Fernandez, and their cousin Ebelia Ocampo. As the fight continued, Ernesto and three or four other people stood in the middle of California Avenue; the rest of the group stood on the adjoining sidewalk. Suddenly, a green Dodge Stratus sped down California Avenue, stopping just past the people positioned in the middle of the street. A male Hispanic, whom Ernesto did not recognize but later

identified as the defendant, got out of the front passenger seat, pulled out a gun, and from about 40 feet away, opened fire at Ernesto.

¶ 6 Valadovinos advanced forward and continued to fire at Ernesto as Ernesto dodged the oncoming bullets. Valadovinos fired a shot, from a range of between 4 and 10 feet, at Ernesto, which hit the ground near Ernesto. Valadovinos then ran back toward the car, but before getting there, pointed his gun toward Carlos. Carlos made eye contact with Valadovinos, and while the gun was aimed at him, Carlos heard a click. Valadovinos got in the front passenger door, and the car took off northbound on California Avenue.

¶ 7 Chicago police lieutenant Paul Kane happened to be driving northbound on California Avenue toward 25th Street when he saw the fight outside the bar and heard the sound of four or five gunshots. Lieutenant Kane reported shots fired and radioed in the description of the green Dodge Stratus.

¶ 8 Chicago police officers Lobianco, Pruger, Mueller, and Lopez heard the report and proceeded to the area in a single squad car. Kane, meantime, pursued the car as it took off northbound on California Avenue, and as he caught up to it, Valadovinos ran out of the car. Lieutenant Kane followed the car in his marked squad, while Officers Lobianco and Lopez, who had arrived on the scene, pursued Valadovinos on foot. Lobianco and Mueller saw Valadovinos holding a handgun in his left hand, and Lobianco saw him drop the gun as he was running. Officer Pruger followed the chase in his squad, and then on foot. Pruger caught Valadovinos and tackled him to the ground. Valadovinos then head-butted Pruger on the left side of his face. Officer Mueller witnessed the head-butt and assisted in taking Valadovinos into custody.

¶ 9 An evidence technician recovered a semiautomatic pistol where Valadovinos had dropped it and five cartridge cases from the scene of the shooting. A forensic scientist analyzed the cartridge cases and concluded all were fired from the semiautomatic pistol.

¶ 10 The State indicted Valadovinos on three counts of attempted first degree murder while personally discharging a firearm (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2010)), two counts of aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2010)), three counts of aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1) (West 2010)), and two counts of aggravated battery of a police officer (720 ILCS 5/12-4(b)(18) (West 2010)). At trial, Ernesto and Carlos Fernandez and Ebelia Ocampo identified Valadovinos as the assailant.

¶ 11 The trial court gave the following jury instructions for attempted first degree murder, modeled after the pattern jury instructions for attempted first degree murder (Illinois Pattern Jury Instructions, Criminal, Nos. 6.05X, 6.07X (4th ed. 2000)):

"A person commits the offense of attempt first degree murder when he, with the intent to kill an individual, does any act which constitutes a substantial step toward the killing of an individual.

The killing attempted need not have been accomplished."

"To sustain the charge of attempt first degree murder, the State must prove the following propositions:

*First*: That the defendant performed an act which constituted a substantial step toward the killing of an individual; and

*Second*: That the defendant did so with the intent to kill an individual.

- 3 -

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

¶ 12    On the charge of aggravated discharge of a firearm, the instructions read:

"To sustain the charge of aggravated discharge of a firearm, the State must prove the following propositions: First: That the defendant knowingly discharged a firearm; and Second: That the defendant discharged the firearm in the direction of Ernesto Fernandez."

¶ 13    During deliberations, the jury sent this note: "Can we find the defendant guilty of aggravated discharge of a weapon if we believe he was aiming in the general direction of people, or do we have to believe he was firing *specifically* in the direction of Ernesto or another specific individual?" (Emphasis in original.) The trial court answered the question with a note stating, "You have the instructions. Please continue to deliberate."

¶ 14    The jury found Valadovinos guilty of attempted first degree murder, and that he personally discharged a firearm, guilty of aggravated discharge of a firearm, and guilty of aggravated battery of a peace officer.

¶ 15    At sentencing, the State offered aggravating evidence, showing Valadovinos was: (i) a self-identified Satan Disciple gang member and his primary area of gang activity was the intersection of 24th Street and Rockwell; and (ii) on bond at the time of the shooting for a 2008 charge of attempted first degree murder. Valadovinos offered mitigating evidence that he had no criminal history, was 23 years old at sentencing, was acquitted of the prior attempted murder charge, and harmed no one in the shooting.

¶ 16    Before imposing the sentence, the trial judge stated:

"THE COURT: I have heard the arguments of the lawyers. Of course I have considered the presentence investigation. I remember the testimony during the course of the trial. I take to heart many of the arguments that [defense counsel] has put forward to this court today. At the same time, I remember the level of sort of violence that this offense represents. Not far from this very courthouse."

¶ 17    The trial court sentenced Valadovinos to 43 years in the Illinois Department of Corrections–23 years for the attempted murder charge, within the 6-to-30-year statutory mandated guideline for a Class X felony, and a 20-year mandatory enhancement for personally discharging a firearm. The aggravated discharge of a firearm count merged into the attempted murder count. Valadovinos received a sentence of five years for aggravated battery of a peace officer, which the trial court ordered to run concurrently with the other sentences.

¶ 18    The court instructed Valadovinos on filing a motion for a new sentencing hearing. The court warned Valadovinos, however, that he had to list every single reason why he should be allowed a new sentencing hearing, and if Valadovinos forgot to list a reason, he could never argue that reason on appeal. Valadovinos filed a motion for a new trial, which made no allegation of improper jury instructions and no allegation that the trial court improperly considered aggravating factors at the sentencing hearing. The trial court denied Valadovinos's

motion, and this timely appeal followed.

¶ 19                                    ANALYSIS
¶ 20                   Jury Instruction for Attempted First Degree Murder
¶ 21        Valadovinos argues that the trial court violated his right to have the jury properly instructed
for attempted first degree murder when he instructed the jury that it needed to find Valadovinos
intended to kill "an individual" rather than intended specifically to kill Ernesto Fernandez.

¶ 22        The indictment for attempted first degree murder named Ernesto Fernandez as the intended
victim. Valadovinos argues that because the jury instruction did not specify Ernesto, and the
indictment did, the jury likely thought the State only had to prove beyond a reasonable doubt
that Valadovinos intended to kill "an individual" and not Ernesto, as the State was required to
prove.

¶ 23        Jury instructions should explain the correct principles of law that apply to the evidence so
the jury can "arrive at a correct conclusion according to the law and the evidence." (Internal
quotation marks omitted.) *People v. Anderson*, 2012 IL App (1st) 103288, ¶ 57; *People v.
Ramey*, 151 Ill. 2d 498, 535 (1992) ("[T]he jury may, by the application of proper legal
principles, arrive at a correct conclusion according to the law and the evidence." (Internal
quotation marks omitted.)). Additionally, the instructions must plainly set out the applicable
law and not be misleading or confusing. *Anderson*, 2012 IL App (1st) 103288, ¶ 57. When a
jury does not receive proper guidance through instructions, it cannot perform its constitutional
functions and thereby violates a defendant's right to a fair trial. *People v. Pollock*, 202 Ill. 2d
189, 212 (2002). Reversal is required when an instructional error "creates a serious risk that the
jurors incorrectly convicted the defendant because they did not understand the applicable law,
so as to severely threaten the fairness of the trial." (Internal quotation marks omitted.) *People
v. Durr*, 215 Ill. 2d 283, 299 (2005). Where jury instructions are unclear or ambiguous, a
reviewing court can look to the opening statements and closing arguments for clarification. See
*People v. Stevenson*, 198 Ill. App. 3d 376, 382 (1990).

¶ 24        Generally, we review jury instructions for an abuse of discretion. *People v. Hammonds*,
409 Ill. App. 3d 838, 849 (2011). When the issue is whether the jury instructions accurately
explain the law, the standard of review is *de novo*. *Id*.

¶ 25        Before determining if the trial court erred on the jury instructions, we note Valadovinos
raises this issue for the first time on appeal. Generally, we will not review jury instruction error
when the defendant has neither objected to the instruction nor offered "an alternative
instruction at trial and does not raise the instruction issue in a posttrial motion." *People v.
Herron*, 215 Ill. 2d 167, 175 (2005); *People v. Sargent*, 239 Ill. 2d 166, 188-89 (2010). Illinois
Supreme Court Rule 451(c) provides a limited exception, which states that criminal jury
instructions containing substantial defects "are not waived by failure to make timely objections
thereto if the interests of justice require." Ill. S. Ct. R. 451(c) (eff. Apr. 8, 2013). The rule
corrects "grave errors," namely, (i) errors so serious that they deny the defendant a substantial
right, and (ii) errors in cases so factually close that fundamental fairness requires that the jury
be properly instructed. *Sargent*, 239 Ill. 2d at 189.

¶ 26        During trial Valadovinos received a copy of the jury instructions and lodged no objections
to the first degree attempted murder instruction. Nor did he offer any alternate instructions.
After sentencing, Valadovinos filed a motion for a new trial, which omits any mention of

improper jury instructions. Valadovinos now raises the issue for the first time. We will review the propriety of the jury instructions only if the jury instructions contain substantial defects which amount to plain error. But even before we determine plain error, we must decide whether error occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). We find no error regarding the first degree attempted murder instruction under these facts.

¶ 27    Illinois Supreme Court Rule 451(a) directs that the trial court follow the Illinois Pattern Jury Instructions, Criminal, unless the trial court decides that it does not accurately reflect the law. Ill. S. Ct. R. 451(a) (eff. Apr. 8, 2013). The attempted first degree murder instructions given to the jury closely followed the pattern instructions for attempted first degree murder, but the instructions given had the propositions labeled as "First" and "Second" rather than "First Proposition" and "Second Proposition." The instructions vary in a minor, nonsubstantive way.

¶ 28    In *People v. Malone*, the appellate court held an attempted first degree murder jury instruction did not need to include the name of the intended victim. *People v. Malone*, 37 Ill. App. 3d 185, 191 (1976). The court thought the jury understood who the victim of attempted murder was, and it could see no reason to reverse on this ground. There, the facts did not render the instructions inadequate, as they gave due consideration to the facts and governing law. *Id*. Additionally, the court noted the name of the victim is not an element of attempted first degree murder, nor is there a place for the victim's name in the Illinois Pattern Jury Instructions. *Id*.

¶ 29    Unless we find the instructions did not accurately reflect the law under the facts presented, the standard pattern instructions are appropriate. As discussed below, there is no basis for modification of the basic instructions.

¶ 30    The inclusion in the jury instructions of an attempted first degree murder victim's name was necessary in *People v. Anderson*, 2012 IL App (1st) 103288. There, the trial court gave the jurors virtually identical instructions as here. *Id.* ¶ 58. But, *Anderson* involved two separate victims, a victim of murder and a victim of attempted first degree murder. *Id*. ¶ 56. The court found that the jury could have mistaken the instruction and confused the identity of the intended victim of the attempted first degree murder. *Id.* ¶ 64.

¶ 31    Valadovinos contends the jury may have been confused by the instructions and thought that it only had to find he intended to kill any individual on the street that night rather than find that the State proved he intended specifically to kill Ernesto. Valadovinos's argument fails.

¶ 32    First, Valadovinos uses the crime's apparent random nature to suggest he may not have specifically targeted Ernesto and that the jury may have thought someone else was the target. Valadovinos argues that several people there could have been a target because Ernesto did not recognize or know Valadovinos, and because the sequence of events are such that Valadovinos could not have had any idea that when he drove up, Ernesto would be there.

¶ 33    We find this argument unconvincing. Random as the shooting may appear, the overwhelming evidence shows, for whatever reason, Valadovinos singled out Ernesto as the sole target of all five shots. While other potential victims certainly were there, Ernesto was the one person targeted by Valadovinos.

¶ 34    Moreover, at *voir dire*, the trial judge read the indictment to the pool of potential jurors, "First is attempt first degree murder on or about the date of February 28, 2010, in that he, without legal justification, *with intent to kill, did an act to wit, shot at Ernesto Fernandez about the body while armed with a firearm.*" (Emphasis added.) Thus, from the beginning of the trial, the jurors were informed that Ernesto was the only target of all five shots.

¶ 35 In the State's opening statement, the assistant State's Attorney told the jury that to find Valadovinos guilty of attempted murder, they must find he intended to kill Ernesto, specifically. And, in the State's closing argument, the prosecutor told the jury, "Although there were other people out on that street, the defendant never pointed that gun at anyone else. He never pointed it anywhere else. *He pointed it at the victim, Ernesto Fernandez, and he fired it*." (Emphasis added.) In closing, the State also repeatedly referred to Ernesto as the only attempted first degree murder victim, saying, "the defendant, Ignacio Valadovinos, attempted to execute Ernesto Fernandez," "He ran at Ernesto Fernandez with a gun in his hand and fired at him five times," and "Make no mistake, Ladies and Gentlemen. This man, this defendant intended to kill Ernesto Fernandez." Thus, the jury was well informed that the sole intended target was Ernesto.

¶ 36 Even if the instructions, absent Valadovinos's name, did amount to error, the error was not so serious that it affected the fairness of the defendant's trial, nor did it challenge the integrity of the judicial process. Likewise, we would not consider the evidence to be closely balanced. Ernesto testified that he saw Valadovinos get out of the car and immediately fire his gun. Valadovinos was shooting and running toward him, and only him. Carlos testified that Valadovinos aimed his gun directly at Ernesto and approached Ernesto while firing. In contrast, no testimony or other evidence suggests any intended target other than Ernesto. Because the evidence points solely to Ernesto as the only target, the second prong cannot be satisfied.

¶ 37                                     Jury Note

¶ 38 Next, Valadovinos argues the jury's note demonstrates that the jury harbored doubts about whether the State proved Valadovinos fired specifically at Ernesto. Valadovinos asserts the note denotes that the jury interpreted the instruction to allow for shooting specifically in the direction of another individual, or even in the general direction of people.

¶ 39 We initially observe that the jury's note did not ask for clarification on the attempted murder instruction, but on the aggravated discharge of a weapon instruction. We disagree with Valadovinos that the jury misunderstood either instruction. Both instructions unambiguously conveyed the correct principles of law. We do not read the jury's note as misinterpreting the law, but as attempting to make certain the jury understood the law. "Where a jury has raised an explicit question on a point of law arising from the facts over which there is doubt or confusion, the court should attempt to clarify the question in the minds of the jury members." (Internal quotation marks omitted.) *People v. Reid*, 136 Ill. 2d 27, 39 (1990). The jurors sought to be certain that they had to find that Valadovinos aimed and fired specifically in the direction of Ernesto to find him guilty of aggravated discharge of a firearm. The court responded that the instructions were correct and asked the jury continue deliberations.

¶ 40 Less than two hours later, the jury returned with a verdict. Valadovinos was found guilty of attempted first degree murder and aggravated discharge of a firearm. By convicting Valadovinos of aggravated discharge of a firearm, they found he shot specifically in the direction of Ernesto. As the facts show, Valadovinos fired all five shots at Ernesto. The jury must have understood Ernesto was also the victim of the attempted murder charge, as both charges result from the same shooting.

¶ 41 Ineffective Assistance of Counsel

¶ 42 Finally, Valadovinos asserts that his trial attorney provided constitutionally ineffective assistance by failing to object to the jury instructions on the attempted first degree murder. We reject this contention.

¶ 43 A defendant is denied effective assistance of counsel when counsel's performance falls below an objective standard of reasonableness and a reasonable probability exists that, but for counsel's performance, the trial would have turned out differently. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Given that the jury instructions were not erroneous, it was not objectively unreasonable for Valadovinos's counsel to forego raising the instruction issue either through objection or the posttrial motion. *People v. Anderson*, 2012 IL App (1st) 103288, ¶ 53. Further, because there was no error in the instruction, Valadovinos will be unable to show a reasonable probability that the trial's outcome would have been different even had his attorney objected or raised the issue in a posttrial motion. *Id.*

¶ 44 Mitigating and Aggravating Evidence at the Sentencing Hearing

¶ 45 Valadovinos urges us to conclude that the trial court gave improper weight to the mitigating evidence at sentencing, such as his age and lack of prior criminal convictions and that no one got hurt during the shooting. Additionally, Valadovinos argues that the trial court impermissibly considered facts in aggravation that were inherent to the offense as charged.

¶ 46 In Illinois, sentencing judges impose criminal penalties according to the seriousness of the crime and with the objective of restoring the offender to useful citizenship. Ill. Const. 1970, art. I, § 11. This mandate requires courts to do more than consider rehabilitative factors, but actually act on those factors, lest they impose a sentence effectively negating the likelihood of rehabilitation. *People v. Rickard*, 99 Ill. App. 3d 914, 918-19 (1981). On appeal, there is a strong presumption that the sentencing court has considered all relevant factors and any mitigation evidence presented. *People v. Burnette*, 325 Ill. App. 3d 792, 808 (2001). To rebut this presumption, a defendant must make an affirmative showing that that the sentencing court did not consider the relevant factors. *People v. Canet*, 218 Ill. App. 3d 855, 864 (1991).

¶ 47 Further, the sentencing court may not consider a factor implicit in the offense for which the defendant has been convicted as aggravating evidence for that offense. *People v. Phelps*, 211 Ill. 2d 1, 17 (2004). This rule acknowledges that in establishing the sentence range the legislature has already considered the factors inherent in the offense and created the sentencing range with the factors in mind. *People v. Conover*, 84 Ill. 2d 400, 404-05 (1981). The rule is not meant to be applied rigidly because sentences vary in accordance with the circumstances of the particular offense. *People v. Spicer*, 379 Ill. App. 3d 441, 468 (2007). When making a determination as to whether improper factors were considered, we focus on the entire record as opposed to a few words or statements made by the sentencing court. *People v. Ward*, 113 Ill. 2d 516, 526-27 (1986). Even if the sentencing court mentions the improper fact, a defendant must show that the court relied on the particular improper fact when imposing the sentence. *People v. Garza*, 125 Ill. App. 3d 182, 186 (1984).

¶ 48 A trial court has broad discretionary powers in imposing a sentence, *People v. Fern*, 189 Ill. 2d 48, 53 (1999), and its sentencing decision deserves great deference, *People v. Perruquet*, 68 Ill. 2d 149, 154 (1977). See *People v. Shaw*, 351 Ill. App. 3d 1087, 1093 (2004) (generally trial courts in much better position than reviewing courts to determine appropriate sentence). Unlike a reviewing court, the sentencing court has the opportunity to weigh factors such as the

defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). For these reasons, the reviewing court should avoid substituting its judgment for that of the sentencing court simply because the reviewing court might have given different weight to the factors. *Id*. We will not substitute our judgment for that of the trial court absent an abuse of discretion. *People v. Rogers*, 197 Ill. 2d 216, 223 (2001).

¶ 49 Sentences within the statutory mandated guidelines are presumed proper and will not be overturned or reduced unless: (i) affirmatively shown to greatly depart from the spirit and purpose of the law, or (ii) are manifestly contrary to constitutional guidelines. *People v. Boclair*, 225 Ill. App. 3d 331, 335 (1992). A sentence promotes the spirit and purpose of the law when it reflects the seriousness of the offense and gives adequate consideration to defendant's rehabilitative potential. *Id*.

¶ 50 Valadovinos's sentence of 43 years, though lengthy, is within the statutorily mandated guidelines for attempted first degree murder while personally discharging a firearm.

¶ 51 Valadovinos did not raise the issue of improper aggravating evidence in his postsentencing motion, and, the State argues, he should not be permitted it raise it now. In his posttrial motion, Valadovinos claimed, "(i) the defendant is twenty-three years of age and is a life long resident of Illinois; (ii) that the sentence imposed is excessive and is not fair in this case." No mention is made that the trial court considered improper aggravating evidence or gave improper weight to mitigating evidence when imposing the sentence. Although Valadovinos's motion did not explicitly raise the issue of improper aggravating evidence, the motion did touch on the issue of an unfair and excessive sentence, and therefore we find that the issue has been preserved for appeal. See *People v. Heider*, 231 Ill. 2d 1 (2008).

¶ 52 Valadovinos argues that the trial court erred by failing to give proper weight to the mitigating evidence, particularly, his age, lack of prior criminal convictions, and the fact no one was harmed during the shooting. He asks us to look to the judge's comments in which he says he considered the presentence investigation and all the testimony offered at trial, took to heart many of the arguments the defense counsel put forward, and remembered the "level of sort of violence that the offense represents."

¶ 53 We presume where mitigation evidence was presented, the sentencing court considered it. See *People v. Burnette*, 325 Ill. App. 3d 792, 808 (2001); *People v. Trimble*, 220 Ill. App. 3d 338, 355-56 (1991). Valadovinos made no affirmative showing that the trial court failed to give proper weight to the mitigating evidence offered at the sentencing hearing. We find nothing to indicate that the sentencing court abused its discretion in weighing the mitigating evidence.

¶ 54 Next, Valadovinos argues that the trial court abused its discretion when it stated, "I remember the level of sort of violence," which, according to Valadovinos, shows the judge impermissibly considered facts in aggravation that were inherent to the offense as charged.

¶ 55 In devising an appropriate sentence, the court considers the particular circumstances and facts that speak to the seriousness of the offense. *People v. Perruquet*, 68 Ill. 2d 149, 154 (1977). Although elements inherent in the offense are off-limits as aggravating factors, the sentencing judge cannot be expected to ignore factors relevant to a sentencing decision. *People v. Saldivar*, 113 Ill. 2d 256, 268 (1986).

¶ 56    Valadovinos fired five shots toward Ernesto, which led to a car chase and foot pursuit with police. Valadovinos's actions placed a number of people in danger, including the people in the street, the drivers and pedestrians in proximity to the car chase, and the arresting officers. The context satisfies us that by "level of violence," the judge refers to the gravity of Valadovinos's actions, and not the violence inherent in the offense. Thus, the sentencing court considered only permissible factors.

¶ 57                                  Corrections to the Mittimus

¶ 58    The trial court awarded defendant 517 days of presentence credit; however, the record indicates that defendant spent 692 days in pretrial custody. A defendant is entitled to credit for any part of any day spent in custody. 730 ILCS 5/5-4.5-100 (West 2012). The State does not object to correcting the defendant's mittimus to reflect a presentence credit of 692 days. We order the clerk of the circuit court to correct defendant's mittimus to 692 days of credit. Ill. S. Ct. R. 615(b)(1).

¶ 59                                        CONCLUSION

¶ 60    We affirm defendant's conviction and sentence and correct the mittimus to reflect a presentence credit of 692 days.

¶ 61    Affirmed.