2026 IL App (1st) 242147-U

No. 1-24-2147

Order filed January 9, 2026

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 13 CR 02582 |
| | ) | |
| YECARY HARRIS, | ) | Honorable |
| | ) | James Bryan Novy, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE ODEN JOHNSON delivered the judgment of the court.
Presiding Justice Mitchell and Justice Mikva concurred in the judgment.

**ORDER**

¶ 1  *Held*: Defendant's sentence is affirmed where he failed to substantiate (1) that the resentencing court disregarded mitigating information, and (2) that the resentencing court relied on the transcript of the initial sentencing hearing or that consideration of the transcript constituted prejudicial error.

¶ 2  Following a bench trial, defendant Yecary Harris was convicted of first degree murder and sentenced to a 50-year prison term. (Defendant's name also appears as Ye'Cary Harris in the record.) Defendant appealed, and this court remanded for resentencing due to a procedural error

but otherwise affirmed. *People v. Harris*, 2023 IL App (1st) 210754. On remand, defendant was resentenced to a 50-year prison term. On appeal, defendant contends that the resentencing court failed to consider mitigating factors, including his mental illness, and erroneously considered the transcript from his initial sentencing hearing. We affirm.

¶ 3    This court detailed the trial evidence in our prior order on direct appeal. We only restate the evidence relevant to the instant appeal.

¶ 4    Defendant was charged with multiple counts of first degree murder and aggravated fleeing or attempting to elude a peace officer arising from the shooting death of Christopher Thomas on December 30, 2012. Rodney Harris, who is not related to defendant, was also charged and is not a party to this appeal. Defendant proceeded to a bench trial before the Honorable James B. Linn.

¶ 5    Albert Williams testified that on December 30, 2012, at approximately 5 p.m., he was working at a Chicago liquor store with James Banks. Defendant asked Williams where defendant could obtain cigarettes and marijuana. Williams directed defendant to Banks and witnessed defendant talking with Banks and Thomas, who was also in the store. Defendant exited with Thomas, explaining that he did not want to buy marijuana in view of the liquor store's surveillance cameras.

¶ 6    Shortly thereafter, Williams went outside and saw defendant and Thomas conversing approximately 20 feet away. Thomas began to remove his coat. Defendant then shot Thomas, who tried to grab the firearm from defendant. Defendant fired multiple shots even after Thomas had collapsed. Williams fell to the ground because defendant was "shooting around." Defendant then jumped over Williams, ran to the corner, stuffed the firearm in his waistband, and entered the passenger seat of a silver vehicle parked at a gas station across the street. The silver vehicle drove

away when police arrived approximately a minute later. Williams later identified defendant in a lineup.

¶ 7       Anthony Freeman testified that he was approaching the liquor store when he observed two men talking down the street. One man shot the other multiple times, including once after the second man had fallen to the ground.

¶ 8       Donald Braxton, who was also present, testified to hearing multiple gunshots and witnessing defendant shoot Thomas before fleeing into a vehicle parked across the street. Braxton saw the silver vehicle "zooming" away with defendant in the front passenger seat when the police arrived. Braxton went to Thomas, who "took his last breath." Braxton did not see any weapons on the ground. Braxton also later identified defendant in a lineup.

¶ 9       Chicago police officer James Atkinson testified that he heard several gunshots and drove to the scene. There, Braxton indicated that defendant was in the silver vehicle, which Atkinson identified as a Chrysler. Atkinson then pulled into the gas station behind the silver Chrysler. Chicago police officer Bobby Tong also tried to block the silver Chrysler, which drove away.

¶ 10      Atkinson and Tong pursued, and other officers joined the chase. Defendant ran stop signs before entering the Dan Ryan Expressway. The officers continued their high-speed pursuit until the 43rd Street exit. Atkinson witnessed the Chrysler crash into another vehicle, which flipped several times before landing in front of his own. Atkinson confirmed that the occupant of the other vehicle was "okay."

¶ 11      Tong testified that following the crash, defendant left the Chrysler. Defendant ran, and Tong arrested him 60 to 90 seconds later.

¶ 12    Chicago police officer Kevin Kilroy testified that he found a 9-milimeter Luger on a parkway on the route of the chase. Forensic investigator Jamal Judeh testified that he recovered the firearm. He also recovered other evidence, including two fired bullets and one metal fragment found under Thomas' body; according to Judeh, that indicated someone had stood over Thomas and fired into him.

¶ 13    Stipulated forensic testimony established, in relevant part, that the bullets and cartridge cases recovered at the scene of the shooting came from the Luger. The parties additionally stipulated that Dr. Stephen Cina, who performed Thomas' autopsy, would testify that Thomas' cause of death was homicide due to multiple gunshot wounds, including from seven shots to his back and the back of his right arm.

¶ 14    The trial court found defendant guilty on all counts, merging them into one count for first degree murder (720 ILCS 5/9-1 (West 2012)).

¶ 15    Defendant's initial sentencing hearing was held via Zoom on June 9, 2021. The State's evidence in aggravation included testimony from Cook County sheriff correctional officer Lawrence O'Rourke regarding an incident for which defendant was convicted of felony resisting a correctional officer. The court also heard victim impact statements from Thomas' sister, Chrystal Kyles, and mother, Valerie Kyles. (Because Chrystal Kyles and Valerie Kyles have the same last name, we refer to them by their first names.) The State additionally proffered defendant's criminal history, including a 2002 aggravated kidnapping conviction.

¶ 16    Defendant did not present evidence in mitigation apart from his presentence investigation report (PSI), portions of which were blank because he refused to answer the probation officer's questions. Defense counsel argued that defendant's history of mental illness, lack of family

support, and prior employment warranted the minimum sentence. Defendant spoke, expressing sympathy for Thomas' family but professing innocence.

¶ 17    The trial court imposed 50 years' imprisonment.

¶ 18    Defendant appealed and argued, in relevant part, that the trial court failed to obtain his waiver for an in-person hearing before proceeding with his sentencing hearing via Zoom and without counsel in the same location. *Harris*, 2023 IL App (1st) 210754, ¶ 56. We remanded for a new sentencing hearing and otherwise affirmed. *Id.* ¶ 115.

¶ 19    The Honorable James Bryan Novy presided over the resentencing hearing. Judge Novy noted that he had reviewed a new PSI, which the parties amended in court, the trial and sentencing transcripts, and this court's order on direct appeal.

¶ 20    The new PSI, as amended, is included in the record on appeal. It indicates that defendant was 42 years old at the time of resentencing. Defendant reported that he was close with his mother but suffered emotional and physical abuse. He attended school until the ninth grade but earned his GED and wanted to learn business management or architecture. Defendant said he had worked as a housekeeper and hoped to work for the railroad upon his release. Defendant was married with two minor children.

¶ 21    Defendant's criminal history included juvenile adjudications for drug-related offenses. As an adult, he was convicted for resisting a correctional officer, "fail[ing] to report annually," aggravated kidnapping, drug offenses, retail theft, criminal possession of a firearm, and a traffic violation. Defendant reported former involvement with the Gangster Disciples.

¶ 22    The PSI details defendant's history of chronic headaches, high blood pressure, breathing problems, and nightmares. Defendant had been diagnosed with posttraumatic stress disorder,

anxiety, bipolar disorder, and borderline schizophrenia, for which he took medication. He reported excessive alcohol consumption starting as a teenager, although "it had been years since he last drank alcohol." He also noted daily use of Xanax, "Narco," "MDAM," and Ecstasy.

¶ 23    The State published two victim impact statements. In her statement, Chrystal recalled her mother screaming that someone had " 'killed my baby,' " her only son. Chrystal described the years of attending court proceedings as "unbearable." In Valerie's statement, she said that defendant had hurt his own family and "destroyed" hers. The State did not recall O'Rourke to testify about defendant's felony conviction for resisting a correctional officer.

¶ 24    In mitigation, defense counsel published a letter from defendant's father, who wrote that defendant groomed and shaved seniors at no cost and transported people to the grocery store. Defendant's father emphasized that defendant was "good and polite to everyone," tried to support his children, and helped when his grandmother and great-grandmother were alive.

¶ 25    The State asked for a 50-year sentence, contending that no substantive issue existed with the original sentence.

¶ 26    Defense counsel asked for the minimum sentence, which he characterized as "already extremely high" based on defendant's age, 44 at the time of sentencing. Counsel shared defendant's desire to use his GED, work, and live with his family upon his release. Counsel discussed defendant's childhood trauma and physical abuse, employment prior to incarceration, renunciation of gang affiliation, and lack of criminal activity since 2016. Counsel emphasized defendant's high blood pressure, chronic headaches, nightmares, and breathing problems. Counsel also highlighted defendant's PTSD, anxiety, bipolar, and schizophrenia diagnoses.

¶ 27    In allocution, defendant expressed remorse but insisted he was innocent. Defendant said that he knew "what it feels like to lose somebody" because he "lost nearly [his] whole family being incarcerated." Defendant concluded by stating that he wished that Thomas' family could "possibly heal" someday.

¶ 28    The resentencing court stated it had considered the PSI, defendant's allocution, the arguments, and "all statutory and nonstatutory factors in aggravation and mitigation, whether specifically mentioned or not" pertaining to defendant's "history and character." Further, the court considered "the seriousness of the offense" and the objective of restoring defendant to useful citizenship. In aggravation, the court found that defendant caused or threatened serious harm and had a history of criminal activity, and that a sentence "is necessary to deter others from committing the same crime." The court stated, "I don't feel there were any factors in mitigation that were statutorily to be considered based on what I heard today."

¶ 29    The resentencing court highlighted defendant's other convictions and stated its belief that the original sentence had been vacated "on a technicality" and was not otherwise inappropriate. The resentencing court quoted the trial court's description of the crime as a "cold-blooded homicide" and "an execution on the street," and imposed 50 years' imprisonment.

¶ 30    Defendant filed a motion for reconsideration, which the resentencing court denied.

¶ 31    On appeal, defendant first argues that the resentencing court failed to consider statutorily mitigating information.

¶ 32    A trial court has broad discretion in imposing its sentence, and a reviewing court will give it great deference. *People v. Brown*, 2017 IL App (1st) 142877, ¶ 60. This is because the trial court is better able to "weigh such factors as the defendant's credibility, demeanor, general moral

character, mentality, social environment, habits, and age." *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). Unless a trial court disregards relevant mitigating information, or considers incompetent evidence or improper aggravating factors, a trial court has "wide latitude" in imposing a sentence within the applicable statutory range. *People v. Jone*s, 2014 IL App (1st) 120927, ¶ 56. We will presume that a sentence within the statutory limits is proper and will not disturb it absent an abuse of discretion. *People v. Webster*, 2023 IL 128428, ¶ 21.

¶ 33    An abuse of discretion occurs where a sentence "varies greatly from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense." *Jones*, 2014 IL App (1st) 120927, ¶ 56. This court will "not substitute its judgment for that of the trial court merely because it would have weighed *** factors differently." *Stacey*, 193 Ill. 2d at 209. The presence of mitigating factors does not mandate a minimum sentence. *Jones*, 2014 IL App (1st) 120927, ¶ 55. A reviewing court presumes the sentencing court considered any mitigation evidence. *People v. Burton*, 2015 IL App (1st) 131600, ¶ 38. A defendant must make an affirmative showing to the contrary to rebut this presumption. *Id.*

¶ 34    Defendant was convicted of first degree murder. 720 ILCS 5/9-1(a)(1) (West 2012). The sentence for this crime ranges from 20 years' to 60 years' imprisonment. 730 ILCS 5/5-4.5-20 (West 2024). A 25-year enhancement applies where, as here, the defendant personally discharged a firearm that caused a death. 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West Supp. 2023). Consequently, the applicable sentencing range in this case was 45 years' to 85 years' imprisonment. Defendant was sentenced to 50 years' imprisonment, within the statutory limits. We will presume this sentence proper unless defendant affirmatively demonstrates otherwise. See *Burton*, 2015 IL App (1st) 131600, ¶ 38.

¶ 35    Section 5-4-1(a)(4) of the Unified Code of Corrections (Code) requires a court to "consider evidence and information offered by the parties in aggravation and mitigation." 730 ILCS 5/5-4-1(a)(4) (West 2024). Section 5-5-3.1 of the Code outlines mitigating factors. 730 ILCS 5/5-5-3.1(a)-(b) (West 2024). In relevant part, the statute provides that a mental illness can be a mitigating factor if, at the time of the crime, it was insufficient to establish an insanity defense but "substantially affected [an offender's] ability to understand the nature of his or her acts or to conform his or her conduct to the requirements of the law." *Id.* § 5-5-3.1(a)(16).

¶ 36    Defendant urges that, contrary to statute, the resentencing court failed to consider any mitigating information presented. He notes the court's comment that "I don't feel there were any factors in mitigation that were statutorily to be considered based on what I heard today," and characterizes this language as the court disregarding all mitigating information. In particular, defendant faults the court's supposed failure to consider evidence of (1) his mental illness; (2) his childhood trauma; (3) his full-time employment before the crime; (4) his supportive family; (5) his contributions to the community; (6) his renunciation of gang affiliations; (7) his empathy for Thomas' family; and (8) his lack of criminal activity since 2016, when he began taking his medication regularly.

¶ 37    As noted, absent an indication to the contrary, a trial court is presumed to have considered all mitigating information presented. *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 19. This court will not focus on a few words or statements made by the trial court in isolation but will consider the record as a whole. *Id.* ¶ 13. Here, shortly before making the comment at issue, the court stated that it had considered the PSI, defendant's allocution, the arguments, and "all statutory and nonstatutory factors in aggravation and mitigation." In context, the court conveyed that it had

considered all information presented and did not find that any evidence constituted mitigating factors prescribed by statute. That is, defendant's mental illness did not qualify as a mitigating factor because it did not substantially affect his ability to understand the nature of his acts or conform his conduct to the requirements of law at the time of the crime. See 730 ILCS 5/5-5-3.1(a)(16) (West 2024). Defendant therefore has not affirmatively shown that the court failed to consider the relevant mitigating information presented. See *Burton*, 2015 IL App (1st) 131600, ¶ 38.

¶ 38 Defendant has also failed to affirmatively demonstrate that the resentencing court failed to consider nonstatutory mitigating evidence concerning his childhood trauma, prior employment, supportive family, community contributions, former gang membership, empathy for Thomas' family, and lack of criminal activity. The record shows the court reviewed and considered defendant's PSI and defense counsel's arguments. Both discuss the mitigating information at issue.

¶ 39 Because the record does not indicate that the resentencing court failed to consider mitigating information, and defendant has failed to affirmatively show otherwise, this court presumes that the resentencing court properly considered defendant's mental illness diagnoses and other mitigating information. Therefore, we will not disturb the court's sentence for abuse of discretion based on a failure to consider the statutory mitigating factors.

¶ 40 Defendant also contends that the resentencing court erred in reviewing the initial sentencing hearing transcript. He asserts that since those proceedings were constitutionally infirm, the court could not consider them. Defendant particularly faults any consideration of O'Rourke's testimony, which was presented in aggravation at the initial sentencing but not at resentencing. The State argues that the court could review the transcript and highlights that no party objected.

¶ 41 We must first determine whether this issue has been preserved for appeal. *People v. Smith*, 228 Ill. 2d 95, 106 (2008). Generally, to preserve a sentencing issue, a defendant must make a contemporaneous objection and raise the issue in a written postsentencing motion. *People v. Colone*, 2024 IL App (1st) 230520, ¶ 136.

¶ 42 Here, defendant did not object to the resentencing court's review of the transcript, and his motion to reconsider did not address the issue. However, the State forfeited any forfeiture or waiver argument by failing to raise the forfeiture issue in its response brief. *People v. Gonazalez*, 2019 IL App (1st) 152760, ¶ 77. Because the State forfeited the forfeiture, we address defendant's claim. *Id.*

¶ 43 When a court mentions an improper fact in sentencing, remand is only warranted where a defendant can "show that the court relied on the particular improper fact when imposing the sentence." *People v. Valadovinos*, 2014 IL App (1st) 130076, ¶ 47. Defendant has not identified, nor has this court found authority for the proposition that a resentencing court's consideration of a transcript of a prior sentencing hearing is a *per se* error. Further, irrespective of whether the resentencing court's review of the initial sentencing hearing transcript was improper, defendant has not demonstrated that the court relied on the transcript when rendering its sentence. To the contrary, the court did not refer to O'Rourke's testimony regarding defendant's conviction for resisting a correctional officer. Therefore, defendant has failed to show that the court weighed an improper consideration such that remand is warranted.

¶ 44 For these reasons, we affirm the judgement of the circuit court.

¶ 45 Affirmed.