2026 IL App (1st) 232427-U

No. 1-23-2427

Order filed March 19, 2026

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 03 CR 27460 |
| | ) | |
| OMAR GALVEZ, | ) | Honorable |
| | ) | James M. Obbish, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE QUISH delivered the judgment of the court.
Presiding Justice Navarro and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's 35-year sentence for first degree murder is affirmed where the sentencing court considered factors in mitigation and did not misconstrue mitigating factors as aggravating factors, improperly rely on elements of the offense in aggravation, or abuse its discretion.

¶ 2    Following a jury trial, defendant Omar Galvez was found guilty of first degree murder (720 ILCS 5/9-1(a)(1) (West 2000)) and sentenced to 46 years in prison. On review of defendant's appeal from the circuit court's denial of his motion for leave to file a *pro se* successive petition for

postconviction relief, this court vacated his sentence as unconstitutional under *People v. Buffer*, 2019 IL 122327, because he was 17 years old at the time of the offense and his 46-year sentence constituted *de facto* life imprisonment. Following a new sentencing hearing, the circuit court imposed 35 years' imprisonment. On appeal, defendant argues that the sentencing judge failed to adequately consider the principles set forth in *Miller v. Alabama*, 567 U.S. 460 (2012), failed to consider the statutory mitigating factors codified in section 5-4.5-105(a) of the Unified Code of Corrections ("Code") (730 ILCS 5/5-4.5-105(a) (West 2022)), misconstrued mitigating factors as aggravating factors, and improperly considered in aggravation elements inherent in the offense. For the following reasons, we affirm.

¶ 3    The evidence at trial established that, on September 28, 2000, defendant and a fellow Latin Lover gang member pulled into a pizzeria parking lot where defendant shot towards a group of rival gang members, killing Noel Torres. Defendant was convicted of first degree murder and sentenced to 46 years in prison, which included a mandatory 25-year enhancement for personally discharging a firearm that proximately caused Torres's death.

¶ 4    This court affirmed defendant's conviction and sentence on direct appeal. See *People v. Galvez*, No. 1-07-1096 (2008) (unpublished order under Illinois Supreme Court Rule 23).

¶ 5    On March 6, 2009, defendant filed a *pro se* petition for relief pursuant to the Post-Conviction Hearing Act ("Act") (725 ILCS 5/122-1 *et seq.* (West 2008)), which the circuit court dismissed. This court affirmed the dismissal on appeal. See *People v. Galvez*, No. 1-09-1094 (2010) (unpublished order under Illinois Supreme Court Rule 23).

¶ 6    On June 13, 2017, defendant filed a motion for leave to file a *pro se* successive petition pursuant to the Act requesting this court vacate his 46-year sentence and remand for a new

sentencing hearing as his sentence constituted a *de facto* life term, violated the Eighth Amendment of the United States Constitution, and failed to consider his age and other factors as mandated by *Miller*. On March 2, 2018, the circuit court denied defendant leave to file the petition, finding that defendant failed to satisfy the cause-and-prejudice test required to file a successive petition.

¶ 7 On December 9, 2019, this court entered an agreed order reversing the circuit court's order, vacating defendant's 46-year sentence, and remanding for a new sentencing hearing in compliance with *People v. Buffer*, 2019 IL 122327. See *People v. Galvez*, No. 1-18-1218 (2019) (disposition order).

¶ 8 Prior to the resentencing hearing, defense counsel filed a sentencing memorandum, mitigation report, and letters to be considered along with defendant's new presentence investigation report ("PSI"). Defendant's new PSI reflected that he was raised by both parents, his father was an "abusive alcoholic," and his mother struggled with alcohol and drugs. He did not have a stable home life and suffered physical abuse from his father and emotional abuse from both parents. He experienced trauma from the "abuse and violence he saw and experienced" in his home. The neighborhood he grew up in was dangerous due to drugs and violence and he did not feel safe there.

¶ 9 Defendant withdrew from school because of "drugs, gangs and fights." He was unable to obtain his GED while incarcerated because of the "difficulties being back and forth between the CCJ and IDOC." Prior to incarceration, defendant was financially supported through employment, selling drugs, and family help. From 1995 to 2018, defendant was a "soldier" for the Latin Lovers street gang. Defendant experienced "negative outside pressure" from the gang and his parents.

¶ 10 Defendant first consumed alcohol at age seven or eight and first smoked marijuana at age

nine. He began using cocaine and mushrooms at age 17 and used cocaine until 2000 and marijuana until 2002. Defendant and his mother used drugs and consumed alcohol together. He had anxiety, but did not have any behavioral issues or current health issues. He first saw a mental health professional in 2015. He was prescribed sleep medication.

¶ 11 Defendant stated that he did not take pride in criminal behavior. While incarcerated, he received certificates for anger management, cognitive behavior, and GED courses when he could attend. Defendant was working toward obtaining his GED and CDL and becoming a barber. He spent his free time trying to "improve himself" and "complete as much education" as he could.

¶ 12 Defendant was convicted in 2000 for aggravated battery with a firearm and in 2016 for attempted aggravated battery to a peace officer.

¶ 13 Defendant's mitigation report reflected that his mother often left him and his siblings in the care of godsiblings who threw parties involving "illegal drug use, alcohol, and sex" as well as fighting. They introduced defendant to "corruptive influences." Defendant's mother dated a gang leader, Juan, who introduced defendant to the gang lifestyle and the Latin Lovers. At age 12, defendant began selling marijuana for Juan. Defendant's mother hosted and fraternized with high-ranking gang members. Juan was deported to Mexico in 1999, and the Latin Lovers gang retained new leadership. Defendant "stay[ed] out of the way" of the new leadership and attempted to leave many times, but he incurred beatings and financial penalties. In 2000, while defendant visited family in Mexico, shots were fired at his home in Chicago. Defendant believed this was retaliation to get him "back in line."

¶ 14 While incarcerated, defendant sought mental health treatment and counseling. He also became a "voice of reason" and a peer mentor for Midwest Books to Prisoners. Defendant

proffered certificates for programs in education, career development, business, finance, communication, and drug and alcohol abuse that he completed while incarcerated.

¶ 15     On December 5, 2023, the circuit court held a resentencing hearing. In aggravation, the State published a victim impact statement from Torres's mother, Daisy Torres. Mrs. Torres stated that her son's death left "a huge hole" in her life and a part of her is "broken and completely irreparable." The pain of losing him has become a "normal part of [her] life." She included an essay written by Torres for the Job Corp program, which he was accepted into before he was killed. In his essay, Torres stated that he wished to make his mother and grandmother proud and prove to himself that he could "do anything [he] put [his] mind to." He was ready to start his life in a "positive way" with the program.

¶ 16     In mitigation, defense counsel called Rogelio Cadena. Cadena testified that he knew defendant since childhood. Their neighborhood had violent crime and gang activity. Defendant was pressured to join a gang and his home was set on fire. Cadena believed that defendant could have had a different life had he been removed from that environment.

¶ 17     Michelle Alfano, a volunteer with Midwest Books to Prisoners, testified that she had known defendant for two years through that program. Defendant "advocat[ed] for other people at the Cook County jail," shared books with others, and tried to develop reading groups. Alfano selected defendant for a writing program where he corresponded with students at the University of Iowa. Alfano could see defendant "helping others in the future" and wanted to continue mentoring him. Defense counsel also submitted numerous letters in support of defendant.

¶ 18     In argument, the State asked the court to consider in aggravation the "violent and gang related nature of the crime," defendant's aggravated battery with a firearm conviction stemming

from a shooting that occurred 16 days after the crime in the case at bar, and defendant's attempted aggravated battery to a peace officer conviction in 2016.

¶ 19    Defense counsel asked the court to consider the mitigation report, testimony at the hearing, and *Miller* factors, including the "choices made" before the brain is fully developed, gang pressure, and family and childhood trauma. Counsel requested the "lowest possible sentence."

¶ 20    In allocution, defendant expressed remorse for the "pain and suffering" caused to both Torres's and defendant's family. He asked the court to recognize that he was no longer the "17-year-old kid" who committed the crime at issue and had matured while incarcerated.

¶ 21    After argument, the circuit court stated that it considered the sentencing memorandum, mitigation report, letters, certificates, PSI, and testimony at the hearing. The court noted that defendant personally shot Torres. Also, defendant's conduct caused the "the most serious sort of result *** the loss of an individual." In aggravation, the court considered the "severity of harm" and "danger to the community" that defendant caused when he fired "five shots," not into the air or ground, but "at a level that allow[ed] at least one of [the] deadly bullets" to strike Torres's head while Torres stood with other individuals. It stated that "the knowledge and intent that the jury found seems extraordinarily evident of what the defendant was choosing to do at the particular time." The court observed that defendant shot another person shortly after the incident in the case at bar and committed an attempted aggravated battery of a correctional officer. The court also noted that deterrence against other "gang-related shootings" was important.

¶ 22    The court mentioned that gang involvement, and the need to discourage gang involvement, could be considered aggravating. However, gang involvement was mitigating as it related to defendant due to the "letters [and] testimony *** about what [defendant's] neighborhood was like"

and the "effect [gang involvement] has on youth and very young people." Also in mitigation, the court acknowledged that defendant suffered abuse at home from both parents beginning at a young age. The court noted that defendant's mother did not protect him from abuse, but rather, "encouraged" it. The court mentioned that defendant's family members' current support for him indicated that they accepted "some responsibility" for "their influence and their lack of preventing the gangs from having such a strong influence on [defendant] *** and *** push[ing] him in a certain direction." Despite this, the court noted that the consequences "mostly fall upon the defendant."

¶ 23    The court mentioned that defendant had taken responsibility for what occurred and had become "invested" in programs to "better" himself. While the court mentioned that defendant participated in many programs recently, it also acknowledged that some programs were only recently available to certain prisoners given the changes in juvenile sentencing.

¶ 24    In announcing its sentence, the court noted that it attempted to "balance" all the evidence presented in mitigation and aggravation including "some *** not even mentioned at this time because this is never *** a prepared speech." The court stated that the "appropriate" sentence would be 35 years' imprisonment.

¶ 25    Defense counsel filed a motion to reconsider the sentence *instanter*, arguing that the *Miller* factors, particularly defendant's gang activity and home life, supported a sentence less than 35 years. The court denied the motion, reiterating that it considered all the factors, including that defendant shot another individual and was the "principal" shooter.

¶ 26    On appeal, defendant argues that the resentencing judge failed to adequately consider the *Miller* principles, failed to consider the statutory mitigating factors, misconstrued mitigating

factors as aggravating factors, and improperly considered in aggravation elements inherent in the offense.

¶ 27    The Illinois Constitution provides that a trial court shall impose a sentence balancing "the seriousness of the offense" and "the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. The trial court has broad discretionary powers when imposing a sentence, and this court will not disturb a sentence within the statutory limits absent an abuse of discretion. *People v. Burton*, 2015 IL App (1st) 131600, ¶¶ 35-36. An abuse of discretion occurs when a sentence "varies greatly from the spirit and purpose of the law" or is "manifestly disproportionate to the nature of the offense." *People v. Contursi*, 2019 IL App (1st) 162894, ¶ 23.

¶ 28    In fashioning a sentence, the trial court must consider "both the seriousness of the offense and the defendant's rehabilitative potential" and carefully consider all factors in aggravation and mitigation. *Id*. ¶ 24; *People v. Jones*, 2019 IL App (1st) 170478, ¶ 50. These factors include "the defendant's age, demeanor, habits, mentality, credibility, criminal history, general moral character, social environment, and education, as well as the nature and circumstances of the crime and of defendant's conduct in the commission of it." *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). The seriousness of the offense is the most important factor in determining an appropriate sentence, and the court is not required "to give greater weight to mitigating factors than to the seriousness of the offense." *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 123. Furthermore, the presence of mitigating factors does not "require a minimum sentence or preclude a maximum sentence." *Id*.

¶ 29    Defendant was sentenced to 35 years in prison for first degree murder, which, as charged, carries a sentencing range of 20 years to 60 years in prison. 720 ILCS 5/9-1(a)(1) (West 2000); 730 ILCS 5/5-4.5-20(a)(1) (West 2022). The court had discretion to impose a 25-year enhancement

for the use of a firearm, but it declined to do so. See 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2022); 730 ILCS 5/5-4.5-105(c) (West 2022). As defendant's 35-year sentence, an 11-year reduction from his original 46-year sentence, falls within the statutory range, we must presume it is proper unless defendant can affirmatively establish otherwise. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46.

¶ 30 Defendant nevertheless argues that the court failed to consider his youth at the time of the offense, outside pressure, and family and home environment as mitigating factors and misconstrued mitigating factors, such as the gang-related outside pressure he endured, certificates he earned, and programs he participated in while incarcerated, as aggravating factors.

¶ 31 In *Miller*, the United States Supreme Court held that the Eighth Amendment "forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders," and therefore, sentencing courts must "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Miller*, 567 U.S. at 479-80. Section 5-4.5-105(a) of the Code adopts the factors discussed in *Miller* and applies them to sentences for offenses committed when a defendant is under 18 years of age. *People v. Woodson*, 2024 IL App (1st) 221172, ¶ 89. "The purpose and spirit of section 5-4.5-105 of the Code is to rectify *** the core concerns implicated when sentencing juvenile offenders as addressed by *Miller* and its progeny." (Internal quotation marks omitted.) *Id*.

¶ 32 Section 5-4.5-105(a), as it existed on the date of resentencing, required a court to consider the following additional factors in mitigation at sentencing:

> "(1) the person's age, impetuosity, and level of maturity at the time of the offense, including the ability to consider risks and consequences of behavior, and the presence of cognitive or developmental disability, or both, if any;

(2) whether the person was subjected to outside pressure, including peer pressure, familial pressure, or negative influences;

(3) the person's family, home environment, educational and social background, including any history of parental neglect, physical abuse, or other childhood trauma;

(4) the person's potential for rehabilitation or evidence of rehabilitation, or both;

(5) the circumstances of the offense;

(6) the person's degree of participation and specific role in the offense, including the level of planning by the defendant before the offense;

(7) whether the person was able to meaningfully participate in his or her defense;

(8) the person's prior juvenile or criminal history; and

(9) any other information the court finds relevant and reliable, including an expression of remorse, if appropriate." 730 ILCS 5/5-4.5-105(a) (West 2022).

¶ 33 The trial court is not required to articulate every factor on the record that it considers in rendering a sentence, including the nine factors in section 5-4.5-105(a). *People v. Villalobos*, 2020 IL App (1st) 171512, ¶ 74; *People v. Marks*, 2023 IL App (3d) 200445, ¶ 61. Moreover, a trial court may not ignore evidence in mitigation, but it may determine the weight given to such evidence. *People v. Brown*, 2017 IL App (1st) 142877, ¶ 63. "Simply because the court does not explicitly mention a sentencing factor does not mean it did not consider it as important or relevant." *Marks*, 2023 IL App (3d) 200445, ¶ 61. We presume the sentencing court considered evidence in mitigation at sentencing. *Burton*, 2015 IL App (1st) 131600, ¶ 38. To rebut this presumption, a defendant must affirmatively show that the sentencing court did not consider the relevant factors. *Id.* Furthermore, this court will not substitute our judgment for that of the trial court merely

because we would have weighed the sentencing factors differently. *Jones*, 2019 IL App (1st) 170478, ¶ 50; *People v. Clark*, 2024 IL 127838, ¶ 75-76.

¶ 34    Here, the record refutes defendant's argument that the trial court ignored the factors and shows that the court carefully considered the section 5-4.5-105(a) factors in mitigation. The court stated that it considered the PSI, sentencing memorandum, mitigation report, letters, certificates, and testimony at the hearing and "balance[d]" all factors in aggravation and mitigation. In sentencing defendant, the court specifically noted that, as it related to defendant's case, gang involvement was mitigating due to the "effect it has on youth and very young people." The court also acknowledged that defendant suffered abuse at home from both parents from a young age and noted that defendant's mother did not protect him from abuse, but rather, "encouraged" it. Furthermore, the court mentioned that defendant's family members' current support for him indicated that they accepted "some responsibility" for "their influence and their lack of preventing the gangs from having such a strong influence on [defendant] *** and *** push[ing] him in a certain direction." Lastly, the court acknowledged that defendant had taken responsibility for what occurred and had become "invested" in programs to "better" himself. As such, the court considered the section 5-4.5-105(a) factors when resentencing defendant including, specifically, his youth, pressure from gang involvement and his family, and his family and home environment.

¶ 35    The record does not support defendant's contention that the court misconstrued mitigating factors, specifically the gang-related outside pressure he endured, certificates he earned, and programs he participated in while incarcerated, as aggravating factors. While the court acknowledged that gang involvement is aggravating in general, as applied to defendant, the court found it mitigating due to his youth at the time of his involvement and the pressure and influence

the gang exerted on him. Moreover, the court found defendant's gang involvement also mitigating given that his parents did not prevent him from engaging in gang activity, but rather, "pushed him" toward that direction. To the extent that the court considered the need to discourage gang involvement, while deterrence is "diminished in juvenile sentencing because juveniles' recklessness, immaturity, and impetuosity make them less likely to consider possible punishment" (*People v. Morris*, 2017 IL App (1st) 141117, ¶ 33), deterrence is still a proper factor for a court to consider in aggravation (730 ILCS 5/5-5-3.2(a)(7) (West 2022)).

¶ 36    As to the certificates defendant earned and the book program he was involved in while incarcerated, it is not "improper for a sentencer to consider a defendant's evidence presented in mitigation as a factor in aggravation." *People v. McNeal*, 175 Ill. 2d 335, 369 (1997). Even so, the circuit court's comments regarding defendant's recent participation in programs and that he was not "reading" during the crime were, at most, made in passing. Furthermore, the court acknowledged that changes in juvenile sentencing made certain programs recently available to certain defendants. Also, the court's comment regarding defendant not reading at the time of the crime and being the shooter highlighted the seriousness of the crime and defendant's degree of participation, factors that the court could consider at sentencing. Moreover, a defendant's "rehabilitative potential *** is not entitled to greater weight than the seriousness of the offense." *People v. Alexander*, 239 Ill. 2d 205, 214 (2010).  Thus, we reject defendant's argument.

¶ 37    Defendant also contends that the sentencing judge improperly considered in aggravation elements inherent in the offense, namely, defendant's intent to kill and the severity of harm to Torres. A sentencing court may not consider an element of the charged offense as an aggravating factor. *People v. Saldivar*, 113 Ill. 2d 256, 271-72 (1986). However, "the trial court is not required

to refrain from any mention of the factors which constitute elements of an offense, and a mere reference to the existence of such a factor is not reversible error." *People v. Bowen*, 2015 IL App (1st) 132046, ¶ 50. In announcing defendant's sentence, the circuit court referred to the manner in which Torres died and recounted the nature of the offense, specifically referring to defendant's "knowledge and intent" and "what the defendant was choosing to do" when firing five shots level with Torres's head while Torres was standing with others outside of a pizzeria.

¶ 38     The court's comments, considered in context, refer to the nature and circumstances of the offense and the extent to which defendant's actions put others in harm's way by shooting towards a group of people. See *id.* ¶ 52 (finding that "the court was merely commenting on the nature and circumstances of the offense" when it described weapon that defendant had sharpened in jail cell); *People v. Valadovinos*, 2014 IL App (1st) 130076, ¶ 56 (court did not consider element inherent in the offense of attempted first degree murder when it referred to the "level of violence" when defendant fired five shots towards the victim with others nearby). The court's comments do not demonstrate that it viewed the mere fact that Torres died or that defendant acted with intent to kill as aggravating factors. Therefore, we reject defendant's argument.

¶ 39     As defendant's 35-year sentence neither departs greatly from the spirit or purpose of the law nor is it manifestly contrary to constitutional guidelines, we find nothing to indicate that the circuit court abused its discretion at sentencing. *Burton*, 2015 IL App (1st) 131600, ¶ 38.

¶ 40     For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 41     Affirmed.